UNITED STATES DISTRICT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

Edward D. Fagan,

                Plaintiff,

                                        CASE No.

    vs.

Central Bank of Cyprus;
Law Office of the Republic of Cyprus;
Petros Clerides;
Eva Rossidou-Papakyriacou;
G.K. Finance Limited;
APUS Finance Ltd.;
APUS Fund Management Ltd.;
G.E.O. Holdings Limited;
Holdsworth Associates Venture Incorporated;
George Kallis a/k/a Georgios Kallis;
Fintop Ltd;
Brian Rance;
Alpha Bank;
Bank of Cyprus, individually and as successor
      to Piraeus Bank and Liaki Bank;
Euro Bank;
Société General Bank (KB Bank);
USB Bank;
John Doe Corporate Defendants 1 – 10 and
John Doe Individual Defendants 1 – 10.

                    Defendants

                           /

FILED BY _____ D.C.

FEB 19 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

    Edward D. Fagan, Plaintiff pro se, as and for his complaint in this matter, hereby states

the following, upon information and belief:

## I.    <u>PRELIMINARY STATEMENT</u>

           1.      The Republic of Cyprus (hereinafter "The Republic") is a nation with a

rich history and culture and wonderful people.

           2.      The Republic has developed a reputation and is known to United States

financial regulators and prosecutors as (i) a haven for money laundering, tax evasion and

other unlawful banking practices, (ii) a place where innocent persons/investors are enticed into illegal business ventures and contracts schemes through which billions of dollars are stolen; and (iii) a country where the officials charged with enforcement of international laws and practices against money-laundering, tax evasion, unlawful banking practices and illegal business ventures and contract schemes consistently fail to enforce the laws and allow crooks to operate freely and without fear of prosecution.

3.      The Republic has become a haven for banks, financial institutions and persons involved with and benefiting from certain contract schemes through which billions of dollars are stolen from innocent persons/investors.

4.      The United States State Department lists The Republic as one of the "Countries/Jurisdictions of Primary Concern".  See https://www.state.gov/j/inl/rls/nrcrpt/2016/vol2/253395.htm.   In its warnings about the perils of doing business in The Republic, the United States State Department refers to the 2016 International Narcotics Control Strategy Report (INCSR) to the Bureau of International Narcotics and Law Enforcement Affairs, wherein international experts reported that The Republic is used by international criminal networks that launder their monies in / through intermediary banks and businesses in Cyprus with "advance fee contract scheme" as one of the most prevalent examples of the criminal activity conducted in / through The Republic and to which innocent persons / investors are victimized.

5.      It is this "Advance Fee Contract Scheme" and contract to which Plaintiff, his partners and predecessors (hereinafter "Plaintiff") fell victim.

6.      The "Advance Fee Contract Scheme" is recognized by the United States Securities and Exchange Commission as a criminal act punishable under United States law. See https://www.sec.gov/fast-answers/answersadvancefeefraudhtm.html

7.      The "advance fee contract scheme" is something that is well known to the authorities in The Republic and is something that they were supposed to protect against. See

http://www.police.gov.cy/police/police.nsf/f5d3aa79835d246ec22578b0003515a8/5ef7a1c0a814eb74c22578a900271b1c?OpenDocument.

8.      This Complaint deals with a scheme of "advance fees" and contracts that were used for money laundering, racketeering and other illegal activities to which Plaintiff fell victim.

9.      Persons, entities and financial institutions in The Republic were used as agents or brokers for the international criminal networks and/or other persons/entities engaged in money laundering, tax evasion and other unlawful activities. [1]

10.     This Complaint explains how (i) some officials of The Republic previously actively interfered with Plaintiff efforts to identify and hold responsible all the persons and entities involved with the contract scheme through which their monies were stolen and (ii) how other officials of The Republic protected the persons and entities who victimized Plaintiff by refusing to take action to investigate and prosecute and (iii) how even other officials of The Republic have delayed the efforts of Plaintiff to identity the persons and entities involved with the illegal contract scheme to which Plaintiff fell

---

[1]      The identities of some of the persons, entities and financial institutions involved in and which benefited from the "advance fee contract scheme" and contracts to which Plaintiff fell victim remain unknown to Plaintiff but will be added as defendants as soon as their identities are discovered.

victim so that the stolen monies could be traced and timely action could be taken to recover the monies and pursue the wrongdoers.

11.     The Complaint explains how private persons and entities, as well as officials of The Republic, involved with the illegal contract scheme directed hundreds of electronic communications, including emails and text messages, to Plaintiff and others throughout the United States, with many of these electronic communications being specifically directed to Plaintiff into Florida.[2]

12.     The contracts that were offered to Plaintiff appeared to be lawful.  Plaintiff had no idea that the contracts were part of a money laundering scheme, a racketeering enterprise or other illegal and unlawful activities.  Plaintiff was willing to enter into the contracts and pay the advance non-refundable fee of 1 % of the contract value because the contracts would have allowed Plaintiff to access hundreds of millions of dollars for development of lawful business and infrastructure projects around the world.  To enter the contract, Plaintiff had to pay an upfront non-refundable fee of 1 % of the monies that they would be able to use for their businesses and infrastructure projects.  Plaintiff would then have a limited period However, in reality, these contracts would never be performed.

13.     The contracts could actually have been performed had their real purpose have been as they were advertised, to wit: making millions/billions available for short term use for lawful business and infrastructure projects.

14.     However, the contracts were actually created and being used to advance unlawful and illegal activities of the persons, financial institutions and undisclosed

_____

[2]     The electronic communications related to the "advance fee contract scheme" and contracts referred to herein were also sent into California, Nevada, New York and other states.

persons/enterprises who stole Plaintiff's advance fee and used the contract as a means by which to launder monies.

15.    The first part of the illegal contract scheme was to solicit and induce Plaintiff to enter into the contracts.  Note:  These contracts were never intended to be performed.  They were simply a method through which billions of dollars were laundered (without the knowledge of Plaintiff) by moving monies from a bank account where unlaundered / dirty / illegal monies were held.  The illegal contract(s) into which Plaintiff were induced, were an integral part of being able to move billions in unlaundered/dirty/illegal monies from one account to another under the pretext that these monies would be used for the contracts with Plaintiff and which monies would later be transferred to another account after the contracts were never performed.  In this way, the unlaundered/dirty/illegal monies were moved from one account, to another account and later to a third account and in this process the funds became laundered and were then transferred on to persons and entities whose identities are unknown.  These unknown person and entities were part of and benefitted from the illegal contract scheme described herein and their identities remain concealed despite Plaintiff's efforts to identify them and to pursue them as being part of the illegal contract scheme.

16.    The second part of the illegal contract scheme involved the civil theft of the 1 % non-refundable upfront fee that Plaintiff was required to pay as a condition to enter into The Contract.

17.    The individual private actors included private persons and foreign companies that used Cyprus as a base.

18.    The individual corporate actors included international and European banks that used Cyprus as a place in and through which to maintain and launder monies.

19.     The government actors included officials of the former Attorney General's office of Cyprus, the Unit for Combating Money Laundering (MOKAS) (which functions under the authority of the Attorney General of Cyprus and former officials of the Cyprus Police who provided protection to the individual private and corporate actors.

20.     The contracts allowed the agents/brokers to steal in excess of twenty million dollars (US DOLLARS) from the 1 % advance fees and the others to launder approximately two billion dollars (US DOLLARS) which was the face value of the contracts that allowed the monies to be laundered.

21.     The contracts at issue have never been rescinded or terminated and Defendants wrongdoing is ongoing.

22.     The criminal enterprise included (i) the use of agents and brokers in the United States who solicited persons to enter into the contracts at issue, (ii) the use of foreign banks and financial institutions that maintained US dollar accounts through which some of the US dollars and financial instruments were cleared and transferred in furtherance of the criminal enterprise, and (iii) the use of correspondent banks in the United States through which some of the US dollars and financial instruments were cleared and transferred in furtherance of the criminal enterprise.

23.     This Complaint is predicated upon a criminal enterprise and scheme perpetrated by the Defendants which included (i) Refusal to Perform / Complete the Contracts; (ii) Fraudulent Inducement into Contracts; (iii) Violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1691 *el seq.* ("RICO"); (iv) Violations of The Florida Racketeer Influenced and Corrupt Organizations Act, Ch. 77-334, 1977 Fla. Laws 1399; (v) Violation of 18 U.S. Code § § 1956 and 1957 – Anti

Money Laundering Laws; (vi) Civil Theft; (vii) Tortious Interference; (ix) Conspiracy; (x) Concealment of Evidence; and (xi) Violation of Government Officials' Duties.

24.     This Court has jurisdiction over Plaintiff's claims because (i) the Court has specific jurisdiction due to the hundreds of communications, mostly electronic communications, that were directed into Florida as part and in furtherance of the criminal enterprise and (ii) the criminal enterprises laundering millions/billions of United States dollars converted in and through US dollar accounts of foreign banks and the use of correspondent banks through which monies and monetary instruments were laundered in violation of US anti-money laundering laws.

25.     The Plaintiff's compensatory damages exceed one hundred twenty million dollars (US DOLLARS), excluding lost business opportunity, damages to ongoing businesses and excluding the statutory treble damages and excluding exemplary, special and punitive damages.

26.     Plaintiff delayed filing this complaint for several years hoping that the investigating authorities in the Republic would take the necessary and prudent actions to investigate and take action to stop the criminal enterprise to which Plaintiff fell victim and which continues to victimize other innocent business persons/investors from the United States. [3] However, to date, the investigating authorities in The Republic have failed in their duties to investigate, locate / identify all persons and entities involved with the money laundering and criminal enterprise to which Plaintiff fell victim. However,

---

[3]     Plaintiff's original complaint to the officials of The Republic was in May 2014 and was updated in September 2017 (GDOE 79/2017). The May 2014 Complaint referred to prior complaints involving the criminal enterprise (File #s M/106/202 and 9 DOE – 317 / 2005 which was closed as part of the corruption by officials in The Republic and were never reopened. The 2017 Complaint was filed because no action was taken on the 2014 complaint.

Plaintiff can delay no longer as there is a real risk that the money trail will go "cold", the criminal actors involved in the criminal enterprise will evade justice and evidence will be lost.

27.     Plaintiff therefore respectfully prays that this Honorable Court find (i) that Defendant agents and brokers for the criminal enterprise be held responsible for Plaintiff's damages; (ii) that the Defendants be compelled to disclose the identity persons and entities behind the agents and brokers for the criminal enterprise be held responsible for Plaintiff's damages; and (iii) that The Republic be held responsible for the failures and wrongful acts of its officers who failed to take necessary and prudent actions to enforce the law against the Defendant agents and brokers, the Defendant financial institutions and all persons and institutions involved with the criminal enterprise.

II.     **DESCRIPTION OF THE PARTIES**

A. **Plaintiff**

28.     Edward D. Fagan ("Fagan") is a business consultant whose principal place of business is 590 NE Wavecrest Way, Boca Raton, FL. 33432. [4]

29.     Fagan acquired and is the owner of 100 % of the rights to the below listed contracts all of which were entered into with the Defendant Kallis and one of his companies:

a.   Contract No. 00SLT0331/1 – Transaction Ref. MIOKATE, Amount: $ 50,000,000.00 US DOLLARS, originally executed in 2000 but reinstated October 2, 2013

---

[4]     Fagan is a disbarred attorney who spends much of his time with charitable efforts; and, recoveries from this action will go to charities worldwide.

b.  Contract No. # 01SLT0307 – Ref. ZORMAK – Amount $

20,000,000.00 originally executed in 2000 and committed to be reinstated

December 2013

c.  Contract No. # 01SLT0402 – Ref. MESABEC – Amount $

10,000,000.00 originally executed in 2000 and committed to be reinstated

December 2013

d.  Contract No. # 01SLT03008 – Ref. FRISANT– Amount $

30,000,000.00 originally executed in 2000 and committed to be reinstated

December 2013 (with additional contract in the amount of $200,000.00 for

which Advance Fee)

e.  Contract No. 00SLT0315 – Transaction Ref. NIOMISA, Amount:

$ 100,000,000.00, originally executed in 2000 but reinstated October 14, 2013

f.  Contract No. 4-0807301AG, Transaction Reference GLASCOW,

Transaction N0. W25/7538, Amount: $ 100,000,000.00 US DOLLARS,

originally executed in May / June 2004 but committed to be reinstated in

December 2013

g.  Contract No. 05-143110/US10/APT, Transaction Ref. MOSAIC,

Amount: $ 10,000,000.00 US DOLLARS originally executed November 2005

but committed to be reinstated in December 2013

h.  Contract Transaction Code APT/TTT/GKF/400, Amount: $

400,000,000.00 US DOLLARS originally executed November 2006 and

committed to be reinstated in December 2013

      i.   Contract No. 0207, Transaction Code LEOMARIS,  Amount: $ 500,000,000.00 US DOLLARS originally executed September 2007 and committed to be reinstated in December 2013

      j.   Contract No. 090917/AGRI, Transaction No. B68733601H, Amount: $ 15,000,000.00 US DOLLARS originally executed September 2009 and committed to be reinstated in December 2013

      k.   Contract No. 100414/20MI/APTI, Transaction No. UO3586316729, Amount: $ 15,000,000.00 US DOLLARS originally executed April 2010 and committed to be reinstated in December 2013

      l.   Contract No. FINTOP Ref. FIN/100EM/APT2/170610, Amount: $ 100,000,000.00 originally executed July 2010 and committed to be reinstated in December 2013

      m.  Contract No. #04-081504/E50/1 – Ref. MIRIEN, Amount: $ 50,000,000.00 originally executed November 2004 and committed to be reinstated December 2013

      n.   Additional contracts were also involved.

For ease of reference the contracts will be filed separately as an Appendix to the Complaint.

30.     Fagan has been actively involved with this matter from 2011 to the present and it was through his direct efforts that the contracts were reinstated.

31.     Whatever proceeds Fagan may recover from this action will go to Jewish Charities, including the rescue, repair and return to the Jewish people of Torahs stolen by the Nazis and which have been found in Eastern European countries, and support for Jewish and Holocaust education throughout the world, including in Cyprus.

**B. Defendants**

32.     The Central Bank of Cyprus ("CBC") is an organ of the Republic of

Cyprus and is located at 80 Kennedy Avenue, CY-1076 and P.O. Box 25529, CY-1395,

Nicosia Cyprus.  CBC is the competent authority for the enforcement of provisions of the

legislation in relation to the financial activities of entities supervised by the CBC, which

include credit, payment, electronic money, currency exchange, leasing and credit

acquiring institutions and as Law No 13(I) of 2018, enacted on 3rd April 2018, the

provisions of the EU Directive 2015/849 of the European Parliament and of the Council

of 20 May 2015 in relation to the prevention of the use of the financial system for the

purposes of money laundering and the financing of terrorism.  The CBC is responsible

for enforcement of guidelines used by the Defendant Cyprus Banks operating in Cyprus

which are to engage in among other things, proper due diligence identification procedures

and measures, monitoring of accounts and transactions, fraudulent tax crimes as predicate

offenses and other management systems to prevent and suppress money laundering and

terrorism financing through Cyprus banks and financial institutions.  See

https://www.centralbank.cy/en/licensing-supervision/prevention-and-suppression-of-

money-laundering-activities-and-financing-of-terrorism-1   At all times relevant hereto,

the CBC failed in its duties to monitor the Defendant Cyprus Banks, Defendant

Companies and the individual defendants who were engaged in money laundering, tax

evasion and other wrongful banking practices that involved the transfer of US dollars in

and through Cyprus banks.

33.     The Law Office of the Republic of Cyprus ("Law Office") is an organ of

the Republic of Cyprus and is located at 1 Apelli Street, Agioi Omologitai, Nicosia,

Cyprus.   Law Office is the competent authority regarding the investigation and enforcement of anti-money laundering and other laws related to protecting against unlawful transfer of monies into / through Cyprus banks and the use of Cyprus banks and financial institutions / intermediaries involved with money laundering, tax evasion and other unlawful activities   Law Office is the supervisory authority over Cyprus' Financial Intelligence Unit for Combating Money Laundering (MOKAS).  At all times relevant hereto, Law Office failed in its duties to investigate and prosecute Defendant Cyprus Banks, Defendant Companies and the individual defendants who were engaged in money laundering, tax evasion and other wrongful banking practices that involved the transfer of US dollars in and through Cyprus banks.  At all times relevant hereto, officials of the Law Office – including but not limited to Petros Clerides (former Attorney General of Cyprus) and Eva Rossidou-Papakyriacou (Chief of MOKAS) violated their duties by engaging in unlawful acts outside the scope of their employment and in violation of their duties, to investigate and prosecute Defendant Cyprus Banks, Defendant Companies and the individual defendants who were engaged in money laundering, tax evasion and other wrongful banking practices that involved the transfer of US dollars in and through Cyprus banks.

34.     Petros Clerides is the former Attorney General of The Republic of Cyprus, whose personal address is currently unknown but who lives in Cyprus and who knowingly and improperly assisted the persons who committed the Advance Fee Contract Scheme and other wrongful acts against Plaintiff.  Mr. Clerides resigned amid charges that he abused his powers and improperly dismissed actions that should have been prosecuted and mishandling of other investigations and prosecutions.  See https://en.wikipedia.org/wiki/Petros_Clerides.  Mr. Clerides is one of the public officials

of The Republic who was and have been protecting the persons and entities involved in the Advance Fee Contract Scheme and contracts.

35.     Eva Rossidou-Papakyriacou, MOKAS Chief maintains her offices at P. O. Box 23768, 1686 Nicosia, Cyprus.  Defendant Rossidou-Papakyriacou exceeded the scope of her official duties by knowingly and improperly assisting the persons who committed the Advance Fee Contract Scheme and other wrongful acts against Plaintiff. In addition, Rossidou – Papakyriacou lied to Plaintiff about her past actions and concealed her conflicts of interest due to close family relationships with Defendant Kallis, which relationship interfered and continues to interfere with Plaintiff's rights.

36.     G.K. Finance Limited ("GK Finance") is a wholly owned subsidiary of G.E.O. Holdings, which in turn is a wholly owned subsidiary of Holdsworth Associates Venture Incorporated, located at Registry of Corporate Affairs P.O. Box 418, Road Town, Tortola VG1110, British Virgin Islands.   GK Finance maintains offices at 2 Gregori Afxentiou Str., 4th Floor, CY 6023 Larnaca, Cyprus.  GK Finance is a recipient and beneficiary of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts and is one of the contracting parties with Plaintiff.

37.     APUS Finance Ltd. ("APUS Finance")  is the successors to G.K. Banking Consultants and Management Company Limited, and which is a wholly owned subsidiary of GK Finance, which in turn is a wholly owned subsidiary of G.E.O. Holdings, which in turn is a wholly owned subsidiary of Holdsworth Associates Venture Incorporated, located at Registry of Corporate Affairs P.O. Box 418, Road Town, Tortola VG1110, British Virgin Islands.   APUS Finance also maintains offices at 2 Gregori Afxentiou Str.,

4th Floor, CY 6023 Larnaca, Cyprus.  APUS Finance is a recipient and beneficiary of some of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts and is one of the contracting parties with Plaintiff.

38.    APUS Fund Management Ltd. ("APUS Fund") is a wholly owned subsidiary of APUS Finance, which in turn is a wholly owned subsidiary of GK Finance, which in turn is a wholly owned subsidiary of G.E.O. Holdings, which in turn is a wholly owned subsidiary of Holdsworth Associates Venture Incorporated, located at Registry of Corporate Affairs P.O. Box 418, Road Town, Tortola VG1110, British Virgin Islands. APUS Fund also maintains offices at 2 Gregori Afxentiou Str., 4th Floor, CY 6023 Larnaca, Cyprus.  APUS Fund is a recipient and beneficiary of some of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

39.    G.E.O. Holding Limited ("GEO") is British Virgin Islands Company and is an owner of GK Finance, APUS Finance, APUS Fund and is a wholly owned subsidiary of Holdsworth Associates Venture Incorporated, located at Registry of Corporate Affairs P.O. Box 418, Road Town, Tortola VG1110, British Virgin Islands. GEO maintains offices at 2 Gregori Afxentiou Str., 4th Floor, CY 6023 Larnaca, Cyprus. GEO Holding is a recipient and beneficiary of some of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

40.     Holdsworth Associates Venture Incorporated ("Holdsworth") is British Virgin Islands Company and is an owner of GEO, GK Finance, APUS Finance and APUS Fund is located at Registry of Corporate Affairs P.O. Box 418, Road Town, Tortola VG1110, British Virgin Islands.   Holdsworth maintains offices at 2 Gregori Afxentiou Str., 4th Floor, CY 6023 Larnaca, Cyprus.  Holdsworth is a recipient and beneficiary of some of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

41.     George Kallis a/k/a Georgios Kallis ("Kallis") is one of the officers and director of G.K. Finance, APUS Finance, APUS Fund, GEO and Holdsworth.   Kallis maintains offices at each of the company offices and also at 2 Gregori Afxentiou Str., 4th Floor, CY 6023 Larnaca, Cyprus.  Kallis is a recipient and beneficiary of some of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

42.     Fintop Ltd. ("Fintop") is a British Virgin Islands Company with Registered Offices at Geneva Place, Waterfront Drive, PO Box 3469, Road Town, Tortola, BVI and maintained offices at 2 Gregori Afxentiou Str., 4th & 5th Floor, CY 6023 Larnaca, Cyprus.  Fintop acted individually and as agent for GK Finance, APUS Finance, APUS Fund, GEO, Holdsworth and for Kallis with regard to the Advance Fee Contract Scheme and Contracts.  Fintop is a recipient and beneficiary of some of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

43.     Brian Rance ("Rance") is a British National who conducts his business through his company Fintop and maintained his offices Registered Offices at Geneva Place, Waterfront Drive, PO Box 3469, Road Town, Tortola, BVI and also at 2 Gregori Afxentiou Str., 4th & 5th Floors, CY 6023 Larnaca, Cyprus  Rance acted individually, as an officer of his company Fintop and as agent for GK Finance, APUS Finance, APUS Fund, GEO, Holdsworth and Kallis with regard to the Advance Fee Contract Scheme and Contracts.  Rance is a recipient and beneficiary of some of the Advance Fee Contract Scheme monies, is one of the main actors in the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

44.     Alpha Bank Cyprus Ltd. ("Alpha Bank") is a Cyprus bank with its main offices at Alpha Bank Building. 3 Lemesou Ave., 2112 Aglantzia. P.O. Box 21661, 1596 Nicosia.  Alpha Bank is one of the banks through which Kallis and his companies moved monies from the Advance Fee Contract Scheme.  Alpha Bank was one of the beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

45.     Piraeus Bank Ltd ("Pireaus Bank") is a Greek Bank with offices at 11 Spyrou Kyprianou Avenue, 1065, Nicosia, Cyprus.  Pireaus Bank is one of the banks through which Kallis and his companies moved monies from the Advance Fee Contract Scheme.  Pireaus Bank was one of the beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

46.     Bank of Cyprus ("Cyprus Bank") individually and as successor to Liaki Bank and Cyprus Popular Bank (acquired by Bank of Cyprus

(https://www.centralbank.cy/images/media/pdf/CyprusPopular_BankPublicCo_Ltd_EN_ Decree.pdf ) is a Cyprus Bank with offices located at 154 Limassol Avenue, 2025 Strovolos, Nicosia, Cyprus.  Cyprus Bank is one of the banks through which Kallis and his companies moved monies from the Advance Fee Contract Scheme.  Cyprus Bank was one of the beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

47.    Euro Bank Cyprus Ltd ("Euro Bank") is a Cyprus Bank with offices at 41 Arch. Makarios III Ave, 1065 Nicosia, Cyprus.  Euro Bank is one of the banks through which Kallis and his companies moved monies from the Advance Fee Contract Scheme. Euro Bank was one of the beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

48.    Société General Bank Cyprus ("SGBC" is a Cyprus Bank with offices at Dighenis Akritas & IBU. Address: 88, Dighenis Akrita Ave. & 36 Kypranoros Street, 1061 Nicosia, Cyprus.   Euro Bank is one of the banks through which Kallis and his companies moved monies from the Advance Fee Contract Scheme.  Euro Bank was one of the beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

49.    USB Bank ("USB") is a Cyprus Bank with offices at I Andrea Chaliou, 1065 Nicosia, Cyprus.  USB is one of the banks through which Kallis and his companies moved monies from the Advance Fee Contract Scheme.  USB was one of the

beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and is a beneficiary of the Money Laundering and Tax Evasion that was made possible by the Contracts.

50.     John Doe Corporate Defendants 1 – 10 ("Doe Corporations") are corporate entities whose identities remain concealed and unknown to Plaintiff.   Doe Corporations are entities for whom Kallis and his companies helped launder monies in the Advance Fee Contract Scheme and entities that interfered with the Contracts.  Doe Corporations are / were beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and are / were beneficiaries of the Money Laundering and Tax Evasion that was made possible by the Contracts.

51.     John Doe Individual Defendants 1 – 10 ("Doe Individuals") are persons whose identities remain concealed and unknown to Plaintiff.   Doe Individuals are the persons who assisted Kallis and his companies launder monies in the Advance Fee Contract Scheme and persons who interfered with the Contracts.  Doe Individuals are / were beneficiaries of the Criminal Enterprise to which Plaintiff fell victim and are / were beneficiaries of the Money Laundering and Tax Evasion that was made possible by the Contracts.

## III.   JURISDICTION & VENUE

### A. Subject Matter Jurisdiction

52.     The Court has jurisdiction over Plaintiff's claims pursuant 28 USC § 1332, which provides that district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (i) citizens of different States; (ii) citizens of a State and citizens or subjects of a foreign state.

53.     The Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964.

54.     The Court has subject matter jurisdiction over Plaintiffs claims for among other things (i) Civil RICO (18 U.S.C. § 1962(c) ; (ii) Wire Fraud (18 U.S.C. § 1343 and 1346; and (iii) Money Laundering (18 U.S.C. § 1956(a)(2)(A).

**B.   Jurisdiction Over Organs of Republic of Cyprus**

55.     The Court has jurisdiction over the Central Bank of Cyprus and Law Office of Cyprus, pursuant to 28 U.S. Code § 1330 and the Plaintiff is not seeking a jury trial in relation to claims against these sovereign entities of the Republic of Cyprus, a foreign sovereign nation.

56.     The Court has jurisdiction over the claims against Central Bank of Cyprus and Law Office of Cyprus, as  28 U.S. Code § 1605 - General exceptions to the jurisdictional immunity of a foreign state – where Section (a) (2). (3) and (5) provides that the foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or

instrumentality is engaged in a commercial activity in the United States; and (5) not

otherwise encompassed in paragraph (2) above, in which money damages are sought

against a foreign state for personal injury or death, or damage to or loss of property,

occurring in the United States and caused by the tortious act or omission of that

foreign state or of any official or employee of that foreign state while acting within the

scope of his office or employment . . .

57.     The Court has additional jurisdiction over Central Bank of Cyprus due to

the fact that it assisted with Defendant Cyprus Banks exchange of the 1.368 billion in US

Dollars that were laundered as explained below and the 13.68 million in US Dollars paid

as Advance Fees under the Plaintiff's contracts.

**C.  <u>Jurisdiction over All Other Defendants</u>**

58.     The Court has specific jurisdiction, pursuant to FL. Stat. § 48.193(1)(a)(2),

over Defendant Law Office of Cyprus and its agents, due to the more than twenty

communications that they sent to Plaintiff in Florida during the period from August 7,

2014 to August 9, 2018.

59.     The Court has specific jurisdiction, pursuant to FL. Stat. § 48.193(1)(a)(2),

over Defendants Kallis, Rance and Their Companies due to the more than 60 electronic

communications that they sent to Plaintiff in Florida during the period from May 13,

2013 to September 21, 2015.

60.     The Court has general and specific jurisdiction, pursuant to FL. Stat. §

48.193(1)(a)(2), over the Defendants Alpha Bank, Bank of Cyprus, individually and as

successor to Piraeus Bank and Liaki Bank, Euro Bank, Société General Bank (KB Bank)

and USB Bank by virtue of their use of their own accounts or accounts at correspondent

banks in the United States through which to exchange / convert the US dollars that were being laundered and were part of the Advance Fee Contract Scheme.

61.     The Court has specific jurisdiction, pursuant to FL. Stat. § 48.193(1)(a)(2), over the Defendant Doe Defendants.

62.     Defendants Kallis, Rance and Their Companies, Alpha Bank, Bank of Cyprus, individually and as successor to Piraeus Bank and Liaki Bank, Euro Bank, Société General Bank (KB Bank), USB Bank, Doe Defendants transact business within Florida state and contracted to supply services to Plaintiff in Florida.

63.     Defendants Kallis, Rance and Their Companies, Alpha Bank, Bank of Cyprus, individually and as successor to Piraeus Bank and Liaki Bank, Euro Bank, Société General Bank (KB Bank), USB Bank, Doe Defendants (i) committed tortious acts in Florida and (ii) sent more than 60 electronic communications into Florida in furtherance of the criminal enterprise and wrongdoings.

64.     Defendants Kallis, Rance and Their Companies, Alpha Bank, Bank of Cyprus, individually and as successor to Piraeus Bank and Liaki Bank, Euro Bank, Société General Bank (KB Bank), USB Bank, Doe Defendants committed tortious acts outside Florida that have caused injury to Plaintiff and Plaintiff's property in Florida and Defendants (i) regularly solicit business and contracts in Florida; (ii) derive substantial revenue from contracts and services entered into with persons in Florida; (iii) expect or should reasonably expect that their actions have had and will have consequences in Florida; and (iv) derive substantial  revenue from interstate or international commerce – specifically the transfer of millions of US dollars – in, through and from Florida.

65.     The Court has jurisdiction over all defendants based on the conspiracy-based jurisdiction.

### D. <u>Venue</u>

66.     Venue is properly placed in this District, pursuant to 28 USC § 1391 (b) (2) as a substantial part of the events giving rise to the claim occurred and/or were directed into this District.

67.     Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district, and because Plaintiff resides in this judicial district and because some of the predicate acts taken in furtherance of the enterprise and conspiracy occurred in this District.

68.     Further, 18 U.S.C. § 1965(b) provides that process may be served in "any judicial district of the United States" when required by the "ends of justice."

69.     No single foreign court can exercise jurisdiction over all of the Defendant Cyprus Banks in a single action and in a single location.

70.     The Republic of Cyprus as relates to this complaint has demonstrated itself as a jurisdiction that protects money laundering schemes such as this one and as such Plaintiff has been unable to secure a fair investigation, let alone be given a fair trial on the issues.  Further, United States Courts have a superior interest in addressing Plaintiff's claims as they involve the use of criminal enterprises through which to launder US currency for persons abroad.

71.     For the convenience of witnesses and the parties, pursuant to 28 USC § 1404 this action may be transferred to any district in which it might have been brought.


## IV.     <u>THE CLAIMS ARE TIMELY</u>

72.     As relates to Plaintiff, Defendants Kallis, Rance and Their Companies, Alpha Bank, Bank of Cyprus, individually and as successor to Piraeus Bank and Liaki Bank, Euro Bank, Société General Bank (KB Bank), USB Bank, Doe Defendants money laundering scheme and other wrongdoing started in early 2000 and has continued until present.

73.     As relates to Plaintiff, Defendant Central Bank of Cyprus and Law Office of Cyprus and its subordinate divisions including MOKAS, acts in furtherance of the money laundering scheme and other wrongdoing started in early 2000 and has continued until present.

74.     Defendants wrongful conduct is part of a continuing tort, the statutes of limitations have never started or have been equitably tolled due to the Defendants' wrongful acts.

75.     Defendant wrongful conduct is part of a continuing tort through which to date, among other things, (i) Defendants have laundered, allowed, facilitated and/or concealed the laundering of in excess of 1.368 billion dollars, (ii) Defendants stole, misappropriated, converted and concealed the civil theft of more than 13.68 million US dollars, (iii) Defendants have facilitated and concealed the ongoing money laundering, tax evasion and other wrongful acts, and (iv) Defendants have endeavored to prevent Plaintiff from being able to locate and obtain an accounting of the monies laundered and stolen and all the persons / entities who / which benefited from the money laundering, Advance Fee Contract Scheme and contracts.

V.      **DEFENDANTS' CRIMINAL ACTS FORM A PATTERN AND ARE INTERRELATED**

76.     Defendants' criminal actions form a pattern that has "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229 (1989)

77.     Defendants related pattern of criminal activity included (i) Defendants' purpose to launder billions of dollars that were converted and exchanged through US banks and which monies were available to advance activities in violation of US and International anti-money laundering and finance of terrorism laws; (ii) Defendants' purpose to steal, launder, misappropriate and convert assets that belonged to Plaintiff; (iii) Defendants' uses of an individual or group of individuals to assist in theft, laundering, misappropriation and conversion of assets that belonged to Plaintiff; (iv) Defendants' use of an individual or group of individuals to assist in theft, laundering, misappropriation and conversion of assets by making false statements to Plaintiff and government officials over whom Defendants exercised control and/or bribed; (v) Defendants' use of an individual or group of individuals to assist them in interfering with the Plaintiff's contract rights and rights to obtain an accounting of and return of the Advance Fee Deposit that was paid for the contract which was never performed / honored by Defendants; and (vi) Defendants use of the same or similarly phrased documents for the purposes of interfering with the Plaintiff's contract rights and rights to obtain an accounting of and return of the Advance Fee Deposit that was paid for the contract which was never performed / honored by Defendants.

78.     Defendants pattern of criminal activity was also related to and had a singular / similar / common purpose, to wit: (i) the laundering of billions of dollars that were converted and exchanged through US banks and which monies were available to

advance activities in violation of US and International anti-money laundering and finance

of terrorism laws and (ii) the civil theft, laundering, misappropriation and conversion of

assets that belonged to Plaintiff.   This singular / similar / common purpose was achieved

by (i) enticing colleagues or subordinates to assist in laundering the 1.368 billions in US

dollars for persons / entities using Cyprus as a place from which to conduct their criminal

enterprise and scheme; (ii) enticing colleagues or subordinates to assist in the civil theft,

money laundering, misappropriation and conversion of the 13.68 million paid in Advance

Fee monies for contracts that were never to be performed or honored by Defendants; (iii)

by using select people to engage in these activities and having centralized / coordinated

control over the activities of each person; (iv) by using the same person to perform

similar discrete tasks all of which were in furtherance of the singular purpose / enterprise.

See _United States v. Daidone_, 471 F.3d 371, 376 (2d Cir. 2006) (acts of money

laundering were sufficiently related in that the acts of racketeering shared common goals

which were increasing and protecting the financial position of the enterprise . . .

participants came from the same pool of associates all of whom were members and

associates of the enterprise).

## VI.    THE ENTERPRISE'S CONTINUITY

79.    As explained below, Defendants' enterprise consists of an open-ended

continuity that has repeated and continues to extend indefinitely into the future. _H.J. Inc.,_

v. NW Bell Tel. Co.,  492 U.S. 229, 242-43 (1989).

80.    Defendants' criminal conduct has also become a regular way of

conducting what might be their other ongoing financial services business(es).

## VII.   <u>STATEMENT OF FACTS</u>

### A. <u>Overview of the Facts</u>

81.    This case involves one master criminal enterprise by persons / entities whose identities have been concealed from Plaintiff and who laundered in excess of 1.368 billion in US currency by using Cyprus banks and agents and the "contracts" with Plaintiff as the charade by which they moved monies from one account to another.

82.    Defendants Kallis, Rance and Their Companies (hereinafter collectively "Kallis, Rance and Their Companies", and Alpha Bank, Bank of Cyprus, individually and as successor to Piraeus Bank and Liaki Bank, Euro Bank, Société General Bank (KB Bank), USB Bank (hereinafter collectively "Cyprus Banks"), Doe Defendants (hereinafter collectively "Doe Defendants") acted as agents and partners and were beneficiaries of the master criminal enterprise to launder the 1.368 billion US Dollars.

83.    Defendants Kallis, Rance and Their Companies and certain of the Doe Defendants were used by the above undisclosed person / entities to create and use certain contracts through which between $20,000,000.00 to $500,000,000.00 in US Dollars was "offered" and purportedly to be made available for use in development projects and/or for trading purposes but which "contracts" were really being used as the vehicles by which the undisclosed persons / entities would launder the more than 1.368 billion US dollars.

84.    The primary purpose of the master criminal enterprise was to launder the 1.368 billion in US dollars owned by the persons / entities whose identities were to be and have been concealed from Plaintiff.

85.    The master criminal enterprise used the "contracts" to which Plaintiff was induced to execute and agreed to, which contracts were never going to be performed by Defendants as the vehicle that gave the excuse or justification for moving the 1.368

billion US dollars from one account to another and eventually laundering the 1.368 billion US DOLLARS in their entirety.

86.     On the surface, the contracts appeared to be very straight forward.

87.     Defendants Kallis, Rance and Their Companies and certain of the Doe Defendants offered amounts of between $50,000,000.00 to $500,000,000.00 in US Dollars for use in development projects and/or for trading purposes.

88.     Plaintiff's obligations were (i) pay an advance fee of 1 % of the contract value; (ii) provide confirmation of the existence of an account at a recognized bank into which the monies would be transferred; (iii) consent to repay monies at the end of the contract term; (iv) guarantees in the form of Letter of Credit, Bank Guarantee or other acceptable security to ensure the repayment of the principal, plus interests and other negotiated and fixed fees, at the end of the contract term the contract term.

89.     Plaintiff had to pay the 1 % Advance Fee to enter into the contract.

90.     Then, once the contract was entered into, Defendants Kallis, Rance and Their Companies and Doe Defendants used the contract to move the contract amount from one account where it was "stored" to an account that was specially designated for purposes of the contract.  This was the first part of the money laundering.

91.     Once the contract was entered into and the monies were moved from Account # 1 to Account # 2, Plaintiff had forty five days to (i) provide confirmation of the existence of an account at a recognized bank into which the monies would be transferred; and (ii) guarantees in the form of Letter of Credit, Bank Guarantee or other acceptable security to ensure the repayment of the principal, plus interests and other negotiated and fixed fees, at the end of the contract term.

92.     Defendants Kallis, Rance and Their Companies and Doe Defendants committed to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds.

93.     Defendants Kallis, Rance and Their Companies and Doe Defendants always referred to the contracts as "Money first" contracts, which they meant that the proof of clean funds would be made available to Plaintiff's bank before Plaintiff had to produce to (i) confirmation of the existence of an account at a recognized bank into which the monies would be transferred; and (ii) guarantees in the form of Letter of Credit, Bank Guarantee or other acceptable security to ensure the repayment of the principal, plus interests and other negotiated and fixed fees, at the end of the contract term.

94.     The production by Defendants Kallis, Rance and Their Companies and Doe Defendants to Plaintiff's bank of the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds, was necessary if Plaintiff was to be able to perform his obligations under the contract.

95.     However, Defendants Kallis, Rance and Their Companies and Doe Defendants refused to provide and refused to cooperate with Plaintiff's efforts to secure, for his bank, the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds.

96.     To this date, Defendants Kallis, Rance and Their Companies and Doe Defendants have concealed the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds.

97.     Defendants Kallis, Rance and Their Companies and Doe Defendants have concealment of the due diligence documentation which include the documentation included of Know Your Client ("KYC") and proof of ownership and origin of clean funds was actually conceal the origin and source of the 1.368 billion in US dollars that was being laundered and the identity of the person / entity whose money was being laundered.

98.     Defendant Law Office of Cyprus, and its agents, lied to Plaintiff and interfered with Plaintiff's efforts to secure the identities of the entities behind the contracts.

99.     At the end of the given period when Plaintiff was required to produce the guarantees in the form of Letter of Credit, Bank Guarantee or other acceptable security to ensure the repayment of the principal, plus interests and other negotiated and fixed fees, at the end of the contract term,  Defendants Kallis, Rance and Their Companies would notify Plaintiff that he had failed to perform his obligations under the contract and that as a result, the 1 % advance fee was forfeited and the monies that had been set aside in Account # 2 for the transaction would be returned to the lender's account(s).

100.    When the monies were "returned" to the lender's account, this was now an account that was twice removed from the original account and the money had been successfully laundered.

101.    Defendants Kallis, Rance and Their Companies then refused to return the 1 %  advance fees, which totaled in excess of 13.68 million US dollars.

102.    As of the filing date, notwithstanding efforts to get Defendant Law Office of Cyprus and its agents to investigate and identify the entity behind the master criminal enterprise, to wit: the persons or entity whose 1.368 billion US dollars was supposedly being offered in the contracts to Plaintiff but which monies were actually being laundered, the identity of these person / entities has been concealed from Plaintiff.

103.    The master criminal enterprise continues in Cyprus and the Defendants have interfered with Plaintiff's rights and ability to enforce the contracts and recover damages as a result of Defendants concealment of the persons or entities whose 1.368 billion US dollars was supposedly being offered in the contracts to Plaintiff, but which monies were actually being laundered.

104.    The 13.68 million US Dollars in advance fees that were paid by Plaintiff, has been moved through accounts at the Defendant Cyprus Banks and the exact location

where the monies are currently deposited has been concealed from Plaintiff. In this way, Plaintiff has been unable to make a claim for replevin of the monies that 13.68 million US Dollars that were paid for contracts with which Defendants failed to honor and comply.

B. **Facts from 2000 to October 2, 2013**

105.   From 2000 to 2013, Defendants Kallis, Rance and Their Companies' and Doe Defendants used a series agents and brokers throughout the world, including the United States and Florida, to bring them persons who might wish to enter into the contracts and who would ultimately become their victims.

106.   From 2000 to 2013, Defendants Kallis, Rance and Their Companies induced Plaintiff (and his predecessors) to enter into contracts that had face values (meaning the amounts of money being made available to Plaintiff) of 1.368 billion US Dollars.

107.   To enter into these contracts, Plaintiff (and his predecessors) paid the advance fees of 1 % of the contract value, totaling 13.68 million in US Dollars.

108.   The contracts at issue here are:

    a.   Contract No. 00SLT0331/1 – Transaction Ref. MIOKATE, Amount: $ 50,000,000.00 US DOLLARS, originally executed in 2000 but reinstated October 2, 2013

    b.   Contract No. # 01SLT0307 – Ref. ZORMAK – Amount $ 20,000,000.00 originally executed in 2000 and committed to be reinstated December 2013

c.  Contract No. # 01SLT0402 – Ref. MESABEC – Amount $ 10,000,000.00 originally executed in 2000 and committed to be reinstated December 2013

d.  Contract No. # 01SLT03008 – Ref. FRISANT– Amount $ 30,000,000.00 originally executed in 2000 and committed to be reinstated December 2013 (with additional contract in the amount of $200,000.00 for which Advance Fee)

e.  Contract No. 00SLT0315 – Transaction Ref. NIOMISA, Amount: $ 100,000,000.00, originally executed in 2000 but reinstated October 14, 2013

f.  Contract No. 4-0807301AG, Transaction Reference GLASCOW, Transaction N0. W25/7538, Amount: $ 100,000,000.00 US DOLLARS, originally executed in May / June 2004 but committed to be reinstated in December 2013

g.  Contract No. 05-143110/US10/APT, Transaction Ref. MOSAIC, Amount: $ 10,000,000.00 US DOLLARS originally executed November 2005 but committed to be reinstated in December 2013

h.  Contract Transaction Code APT/TTT/GKF/400, Amount: $ 400,000,000.00 US DOLLARS originally executed November 2006 and committed to be reinstated in December 2013

i.  Contract No. 0207, Transaction Code LEOMARIS,  Amount: $ 500,000,000.00 US DOLLARS originally executed September 2007 and committed to be reinstated in December 2013

j.   Contract No. 090917/AGRI, Transaction No. B68733601H, Amount: $ 15,000,000.00 US DOLLARS originally executed September 2009 and committed to be reinstated in December 2013

k.   Contract No. 100414/20MI/APTI, Transaction No. UO3586316729, Amount: $ 15,000,000.00 US DOLLARS originally executed April 2010 and committed to be reinstated in December 2013

l.   Contract No. FINTOP Ref. FIN/100EM/APT2/170610, Amount: $ 100,000,000.00 originally executed July 2010 and committed to be reinstated in December 2013

m.   Contract No. #04-081504/E50/1 – Ref. MIRIEN, Amount: $ 50,000,000.00 originally executed November 2004 and committed to be reinstated December 2013

n.   Additional contracts were also involved.

109.   During the period from 2000 to 2004, Defendants Kallis, Rance and Their Companies Kallis used his companies G.K. Banking Consultants and Management Company Limited, G.K. Finance Limited, APUS Finance Ltd., G.E.O. Holdings Ltd. and Holdsworth Associated Ventures Incorporated, to hide and conceal the $ 13.68 million US Dollars paid in the form of the 1 % Advance Fee.

110.   Defendants Kallis, Rance and Their Companies used the Defendant Cyprus Banks to assist in the money laundering, tax evasion, and concealment of the civil theft of the advance fees.

111.   Defendants Kallis, Rance and Their Companies paid certain of their "broker and agents" including Doe Defendants, a percentage of the advance fees for their

part in assisting to get Plaintiff to pay the advance fees and to enter into the contract which was the vehicle for the money laundering of the 1.368 Billion US Dollars.

112.    Defendants Kallis, Rance and Their Companies failed and refused to produce the required banking due diligence documents, proof of ownership and origin of clean funds.

113.    Defendants Kallis, Rance and Their Companies concealed and continue to conceal the identity of the actual and/or beneficial owner of the 1.368 billion that was being laundered.

114.    As a result, Plaintiff was unable to provide the information to the investigating authorities and was unable to take action (i) to recover the 13.68 million in US Dollars in Advance Fees, (ii) locate the accounts at which the 13.68 million in US Dollars are / were being held and/or (iii) to file claims for bailment, replevin and/or damages.

115.    After Defendants Kallis, Rance and Their Companies failed to produce the due diligence documentation/information including origin and proof of funds, failed to honor the contracts, failed produce the promised "loans" and refused to return the Advance Fees, Plaintiff made complaints to Defendant Law Office, its agents and other, as well as other regulatory authorities in Cyprus and elsewhere in the world.

116.    Only one of Kallis, Rance and Their Companies' agents and brokers who brought Plaintiff's predecessors to Kallis was convicted and sentenced for his involvement in the fraud against them.

117.    Defendants Law Office and Petros Clerides refused to cooperate and failed to conduct or allow the conduct of a proper investigation into the actions of Defendants Kallis, Rance and Their Companies.

118.    In 2002, a Swiss prosecutor was able to get Defendant Law Office's, Clerides' and Rossidou-Papakyriacou's cooperation to conduct a search of Defendants Kallis, Rance and Their Companies' offices (in accordance with international warrants); however, Defendant Law Office, Clerides and Rossidou-Papakyriacou provided protection for Defendants Kallis, Rance and Their Companies, Defendants Cyprus Banks and Doe Defendants by refusing to arrest them for the crimes the Swiss Prosecutor concluded had been committed and refused to further their investigations.

119.    During the period from 2002 to 2006, certain Cyprus Police were assigned to investigate the crimes allegedly committed by Defendants Kallis, Rance and Their Companies.

120.    In this regard, Defendant Law Office opened two files:

a.    M/106/2002  - (confirmed in Defendant Law Office letters of 20 February 2003 and 5 March 2005 letters) and

b.    Case Number - 9 DOE - 317 / 2005 - confirmed to Plaintiff directly be in existence as of June 2012 which filed contained / contains in excess of 11 ring binders and thousands of documents – all of which have been withheld from Plaintiff.

121.    In or about 2005, Defendant Law Office requested that Plaintiff's predecessors come to Cyprus (or send sworn Affidavits) to provide evidence of the crimes that were committed against them by Defendants Kallis, Rance and Their Companies, which they did.

122.    By letter of March 7, 2005, Defendants Law Office and Clerides wrote Plaintiff's predecessors that the investigation was ongoing and would be completed.

123.    In December 28, 2005, Defendants Law Office and Clerides emailed Plaintiff's predecessor informing him that *"the Police, upon an advice of the Law Office of the Republic is proceeding with further investigations (against Kallis, Rance and their companies) both in Cyprus and abroad"*.

124.    However, Defendants Law Office and Clerides, refused to provide Plaintiff's predecessors with any of the results of their investigation.

125.    Defendant Law Offices and Clerides directed the Cyprus Police to stop the investigation and cease all efforts regarding the crimes perpetrated by Defendants Kallis, Rance and Their Companies, the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , or the identity of the bank into which the Advance Fee was being held.

126.    The excuse given by Defendant Law Offices and Clerides to Plaintiff's predecessors for why they were stopping the investigation was that they allegedly *"could not find"* the agent Defendants Kallis, Rance and Their Companies used in the master criminal scheme.   This excuse given was a complete and utter lie and was part of an organized "cover up", and "protection" given, by Defendant Law Offices, Clerides, Rossidou-Papakyriacou and their agencies to Defendants Kallis, Rance and Their Companies and others.  Defendants Law Offices, Clerides, Rossidou-Papakyriacou and their agencies knew exactly where the agent was at all relevant times as while he was serving in jail time in Switzerland and Austria for his conduct in the criminal enterprise.

127.    Defendants Law Offices, Clerides, Rossidou-Papakyriacou and their agencies refused to properly investigate the money laundering scheme, civil theft and other crimes and assisted Defendants Kallis, Rance and Their Companies continued

concealment of (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , and (ii) the identity of the bank into which the Advance Fee was being held.

128.    It was not until May 2012, that Defendant Law Offices and specifically the Cyprus Police informed Plaintiff directly *"that on or about May 4, 2007, The Attorney General directed the Cyprus Police to conduct no further investigations, close their files and take no further action"*.

129.    Plaintiffs efforts to get an explanation or report or even a copy of the letter that directed the investigation by stopped, proved fruitless.

130.    As explained below, it was not until the summer of 2015, that Plaintiff discovered that Defendants Law Offices, Clerides and Rossidou-Papakyriacou had been lying to Plaintiff all along and that their refusal to conduct a proper investigation and in particular their efforts to prevent Plaintiff from discovering (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , and (ii) the identity of the bank into which the Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

131.    The wrongful conduct by Defendants Law Offices, Clerides and Rossidou-Papakyriacou was motivated by greed and corruption, was the result of bribes, all in violation of their specific duties.

132.     As will be explained below, it was not until the summer of 2017, that Plaintiff discovered that Defendant Rossidou-Papakyriacou's corruption was the result of her concealed familial relationship with Defendant Kallis.

133.     From as early as 1996 and continuing to 2010, Defendants Kallis, Rance and The Companies induced dozens of people from around the world and in particular from South Africa, the United States, the United Kingdom, Australia, France, Singapore and Switzerland to (i) enter into the Contracts and (ii) pay millions in Advance Fees.

134.     As a result of Defendants Law Offices, Clerides and Rossidou-Papakyriacou wrongful acts, they among other things (i) violated their public duties; (ii) allowed at least 1.368 billion in US Dollars to be laundered through Defendant Cyprus Banks and other banks; (iii) allowed the concealment of the persons / entities who were behind Defendants Kallis, Rance and Their Companies; (iv) interfered with the ability to locate and recover the 13.68 million US Dollars that were paid in Advance Fees for contracts that never closed and which should have been and should still be returned to Plaintiff; and (v) actively assisted Defendants Kallis, Rance and Their Companies and Doe Defendants money laundering, tax evasion and civil theft.

135.     Starting in 2012, Plaintiff attempted to get Defendants Kallis, Rance and Their Companies to either (i) honor the contracts and/or (ii) return the Advance Fees, plus interest.

136.     The negotiations got more serious in May 2013, when Defendants Kallis, Rance and Their Companies wanted to stop or delay Plaintiff from continuing his efforts to discover (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of

Cyprus  and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held.

137.    From May 2013 to October 2, 2013, Defendants Kallis, Rance and The Companies sent knowingly false statements intended to deceive and mislead Plaintiff from continuing efforts to discover (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held.

138.    These false statements were sent by letter and email to Plaintiff in Florida and included Emails and Letters from Defendant's Kallis, Rance and their company emails - brian.r@cytanet.com.cy, fintopltd@cytanet.com.cy, gkfinanceltd@cytanet.com.cy,  gkfinan1@cytanet.com.cy and gkallis@cytanet.com.cy sent to Plaintiff - faganinternational@gmail.com and his address 5708-01 Arbor Club Way, Boca Raton, FL. 33433 and his PO Box 880011, Boca Raton, FL  33433.

139.    The letter and emails sent to Plaintiff in Florida were solicitations and inducements to Plaintiff to Enter into New Contracts or to Agree to Re-Instatement of the Prior Contracts, but were in fact part of the efforts to deceive and mislead Plaintiff from continuing efforts to discover (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held.  The letters and emails included:

    i.   May 13, 2013 Email – Rance to Plaintiff

ii.   June 10, 2013 Email – Rance to Plaintiff

iii.   June 11, 2013 Email – Rance to Plaintiff setting meetings in Cyprus

iv.   June 13, 2013 Emailed Letter – Rance to Plaintiff

v.   June 13, 2013 Email – Rance to Plaintiff

vi.   June 19, 2013 Email – Rance to Plaintiff with suggested guarantee documents

vii.   June 21, 2013 Emails (2) – Rance to Plaintiff

viii.   July 1, 2013 Email – Rance to Plaintiff

ix.   July 12, 103 Email – Rance to Plaintiff

x.   July 15, 2013 Email – Rance to Plaintiff

xi.   July 22, 2013 Emails (2) – Rance to Plaintiff (with specimens of Bank Guarantee)

xii.   July 26, 2013 Email – Rance to Plaintiff regarding reinstatement of first two contracts and commitments to reinstate all other contracts in order

xiii.   August 5, 2013 Emails (2) – GK Finance and Rance to Plaintiff

xiv.   August 19, 2013 Email – GK Finance to Plaintiff

xv.   August 20, 2013 Email (2) – Rance to Plaintiff

xvi.   August 26, 2013 Email (2) – Rance to Plaintiff (re required security and contract reissuance and beginning of concealment of due diligence information related to bank at which contract funds were held and the proof / origin of clean funds)

xvii.   August 29, 2013 Email – Rance to Plaintiff

xviii.   September 4, 2013 Email – Rance to Plaintiff (re continuing to withhold due diligence information related to bank at which contract funds were held and the proof / origin of clean funds)

xix.   September 9, 2013 Emails (2)  – Rance to Plaintiff (confirming re-instatement of all contracts in serial order)

xx.   September 20, 2013 Emails (2) – Rance to Plaintiff with email from Kallis (with terms and solicitation of new offer)

xxi.   September 23, 2013 Email – Rance to Plaintiff regarding meeting with Kallis and demand for changes to proposed Bank Guarantee

xxii.   September 25, 2013 Email – Rance to Plaintiff regarding meeting with Kallis and the outstanding issue of due diligence documents / information being withheld from Plaintiff

xxiii.   September 30, 2013 Email – Rance to Plaintiff

xxiv.   October 1, 2013 Email – Rance to Plaintiff regarding offer to reinstate contracts

140.   In response to Plaintiff's efforts, Defendants Kallis, Rance and Their Companies offered Plaintiff to reinstate all the contracts for which the 13.68 million in Advance Fees were paid and thereby make available the 1.368 billion in US Dollars for the infrastructure projects and trading platforms.

141.   Unbeknownst to Plaintiff, Defendants Kallis, Rance and Their Companies never intended to honor the contracts and used this offer as a means to interfere with Plaintiff's efforts (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of

Cyprus , and (ii) the identity of the bank into which the Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

142.    From May 2013 until October 2013, Defendants Kallis, Rance and Their Companies induced Plaintiff to stop efforts to get the return of the Advance Fees and to stop potential new investigations with Defendants Law Office and their agencies.

143.    This was an intentional effort delay, stay and attempt to avoid having to disclose (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank into which the Advance Fees were deposited and are being held.

144.    From May 2013 forward, Plaintiff started to introduce into the discussions, traders, bankers and other professionals who would ensure performance of the "re-instated contracts" and compliance with the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds.


C. **Facts from October 2, 2013 to End 2015**

145.    On October 2, 2013, Defendants Kallis, Rance and Their Companies re-instated Contract No. 00SLT0331/1 – Transaction Ref. MIOKATE, Amount: $

50,000,000.00 US DOLLARS, originally executed in 2000 but reinstated October 2, 2013, with a $ 1 million US DOLLARS advance fee.

146.    On October 12, 2013, Defendants Kallis, Rance and Their Companies reinstated Contract No. 00SLT0315 – Transaction Ref. NIOMISA, Amount: $ 100,000,000.00, originally executed in 2000 but reinstated October 14, 2013, with a $ 1 million US DOLLARS advance fee;

147.    On October 2 and again on October 12, 2013, Defendants Kallis, Rance and Their Companies contracted to reinstate the below listed contracts:

a.  Contract No. 00SLT0331/1 – Transaction Ref. MIOKATE, Amount: $ 50,000,000.00 US DOLLARS, originally executed in 2000 but reinstated October 2, 2013

b.  Contract No. # 01SLT0307 – Ref. ZORMAK – Amount $ 20,000,000.00 originally executed in 2000 and committed to be reinstated December 2013

c.  Contract No. # 01SLT0402 – Ref. MESABEC – Amount $ 10,000,000.00 originally executed in 2000 and committed to be reinstated December 2013

d.  Contract No. # 01SLT03008 – Ref. FRISANT– Amount $ 30,000,000.00 originally executed in 2000 and committed to be reinstated December 2013 (with additional contract in the amount of $200,000.00 for which Advance Fee)

e.  Contract No. 00SLT0315 – Transaction Ref. NIOMISA, Amount: $ 100,000,000.00, originally executed in 2000 but reinstated October 14, 2013

f.  Contract No. 4-0807301AG, Transaction Reference GLASCOW, Transaction N0. W25/7538, Amount: $ 100,000,000.00 US DOLLARS, originally executed in May / June 2004 but committed to be reinstated in December 2013

g.  Contract No. 05-143110/US10/APT, Transaction Ref. MOSAIC, Amount: $ 10,000,000.00 US DOLLARS originally executed November 2005 but committed to be reinstated in December 2013

h.  Contract Transaction Code APT/TTT/GKF/400, Amount: $ 400,000,000.00 US DOLLARS originally executed November 2006 and committed to be reinstated in December 2013

i.  Contract No. 0207, Transaction Code LEOMARIS,  Amount: $ 500,000,000.00 US DOLLARS originally executed September 2007 and committed to be reinstated in December 2013

j.  Contract No. 090917/AGRI, Transaction No. B68733601H, Amount: $ 15,000,000.00 US DOLLARS originally executed September 2009 and committed to be reinstated in December 2013

k.  Contract No. 100414/20MI/APTI, Transaction No. UO3586316729, Amount: $ 15,000,000.00 US DOLLARS originally executed April 2010 and committed to be reinstated in December 2013

l.  Contract No. FINTOP Ref. FIN/100EM/APT2/170610, Amount: $ 100,000,000.00 originally executed July 2010 and committed to be reinstated in December 2013

m.  Contract No. #04-081504/E50/1 – Ref. MIRIEN, Amount: $

50,000,000.00 originally executed November 2004 and committed to be

reinstated December 2013

n.  Additional contracts were also involved.

148.    From October 2, 2013 onward, Defendants Kallis, Rance and The

Companies sent knowingly false statements intended to deceive and mislead Plaintiff

from continuing their efforts to discover (i) the identity of the persons / entities who were

the owners / beneficial owners of the 1.368 billion in US dollars that were being moved

(laundered) through Defendant Cyprus Banks with no supervision or controls by

Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the

Advance Fees were deposited and are being held.

149.    These false statements were sent by letter and email to Plaintiff in Florida

and included Emails and Letters from Defendant's Kallis, Rance and their company

emails - brian.r@cytanet.com.cy, fintopltd@cytanet.com.cy,

gkfinanceltd@cytanet.com.cy,  gkfinan1@cytanet.com.cy and gkallis@cytanet.com.cy

sent to Plaintiff - faganinternational@gmail.com and his address 5708-01 Arbor Club

Way, Boca Raton, FL. 33433 and his PO Box 880011, Boca Raton, FL  33433.

150.    The letter and emails sent to Plaintiff in Florida included solicitations and

inducements to Plaintiff to Enter into New Contracts and were efforts by Defendants

Kallis, Rance and Their Companies to stall and prevent honoring the re-instated contracts

and were intended to deceive and mislead Plaintiff from continuing efforts to discover (i)

the identity of the persons / entities who were the owners / beneficial owners of the 1.368

billion in US dollars that were being moved (laundered) through Defendant Cyprus

Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the

identity of the bank(s) into which the Advance Fees were deposited and are being held. The letters and emails included:

    i.   October 4, 2013 Email – Rance's assistant to Plaintiff

    ii.   October 14, 2013 Email – Rance to Plaintiff with Email from GKF to Rance to Plaintiff

    iii.   October 15, 2013 Emails (2) – Rance to Plaintiff

    iv.   October 17, 2013 Email –Plaintiff to Rance requesting and Rance's response regarding due diligence documents

    v.   October 18, 2013 Email – Rance to Plaintiff scheduling meetings but refusing to address issue of outstanding due diligence documents

    vi.   October 21, 2013 Email – Rance to Plaintiff with non-responsive due diligence documents

    vii.   October 21, 2013 Emails (3) and one Letter – Rance to Plaintiff explaining reason why they used wrong name of company used in reinstated contract and setting new meetings

    viii.   October 23, 2013 Email – Rance to Plaintiff setting meetings

    ix.   October 25, 2013 Emails (2) and One Letter – Rance to Plaintiff

    x.   October 28, 2013 Email – Rance to Plaintiff

    xi.   October 30, 2013 Email – Rance to Plaintiff

    xii.   October 31, 2013 Emails (2) – Rance to Plaintiff

    xiii.   November 6, 2013 Emails (2) – Rance to Plaintiff

    xiv.   November 8, 2013 Email – Rance to Plaintiff

    xv.   November 12, 2013 Email – Rance to Plaintiff (offering new contract)

    xvi.   November 14, 2013 Email – Rance to Plaintiff

xvii.  November 16, 2013 Email – Rance to Plaintiff

xviii.  November 20, 2013 Email – Rance to Plaintiff regarding closing dates.

xix.  November 22, 2013 Email – Rance to Plaintiff with account information regarding Defendants Kallis, Rance and Their Companies bank accounts in Larnaca

xx.  November 25, 2013 Email – Rance to Plaintiff

xxi.  November 27, 2013 Email – Rance to Plaintiff

xxii.  November 29, 2013 Emails (3) – Rance to Plaintiff explaining that all Plaintiff's documents passed Kallis due diligence requirements, but refusing to identify who was described as "the trust" or "trustee" that controlled the contracts, notification that banks would not provide due diligence and KYC information in bank to bank contact and explaining closing schedule and approximate dates when monies would be transferred

xxiii.  December 4, 2013 Email and Letter – Rance to Plaintiff (confirming Plaintiff documents received and accepted for first two contracts, offering new possible contracts and confirming that Kallis would "re-issue all old contracts each as a stand-alone transaction"

xxiv.  December 8, 2013 Email – Rance to Plaintiff regarding delayed closing dates

xxv.  December 9, 0213 Email(s) – Rance to Plaintiff apologizing about behavior and scheduling meeting and requesting that emails only be sent to business email addresses

xxvi.   December 10, 2013 Emails – Rance to Plaintiff discussing security and Kallis discussions with "trustee" whose name and identity was concealed from Plaintiff

xxvii.   December 12, 2013 Email – Rance to Plaintiff – Plaintiff's documents were in order but must be re-assembled.

xxviii.   December 13, 2013 Emails (2) – Rance to Plaintiff's re-assembled documents in order, accepted and transmitted for closing and scheduling meeting for following week

xxix.   January 6, 2014 Email – Rance to Plaintiff – scheduling meetings for mid-January 2014 at which closing date would be set and including additional offer of new contracts

xxx.   January 7, 2014 Email – Rance to Plaintiff – confirming meetings, approval by Kallis and reaffirming that contracts will be done one by one starting with MIOKATE

xxxi.   January 20, 2014 Email – Rance to Plaintiff– rescheduling meetings and delaying closing

xxxii.   January 23, 2014 Email and Letter – Rance to Plaintiff

xxxiii.   January 23, 2014 Email and Letter – Rance to Plaintiff (refusing to provide due diligence documents including proof of and origin of clean funds)

xxxiv.   January 28, 2014 Email – Rance to Plaintiff (refusing to provide proof of funds and insisting that Defendants Kallis, Rance and Their Companies could speak directly to Plaintiff's bank / bankers, but Plaintiff's bank /

bankers could not speak to Defendant Kallis, Rance and Their Companies' bank)

xxxv.   January 29, 2014 Email – Rance and GK Finance to Plaintiff (setting meeting to discuss outstanding issues and then rescheduling meetings at last minute)

xxxvi.   February 3, 2014 Email and Letter – Rance to Plaintiff, partners and agents (coming from susie@cytanet.com.cy) – demanding information from Plaintiff's bank but refusing to provide due diligence KYC and proof of and origin of clean funds documents

xxxvii.   February 4, 2014 Email – attempting to explain or justify refusal to provide due diligence, KYC and proof of ownership and origin of clean funds

xxxviii.   February 17, 2014 Email and Letter – Rance to Plaintiff, partners and agents (email and letter transmitted from susie@cytanet.com.cy) – demanding information from Plaintiff's bank but refusing to provide due diligence, KYC and proof of ownership and origin of clean funds documents

xxxix.   February 20, 2014 Email – Rance to Plaintiff refusing meetings and continuing to refuse to provide due diligence, KYC and proof of ownership and origin of clean funds documents thereby making it impossible for Plaintiff and its bank to agree to receive funds (not knowing they were clean and legal) and impossible to produce necessary bank guarantees

xl. February 21, 2014 Email – Rance to Plaintiff's agents and consultants – agreeing to reschedule of meetings to discuss in person the KYC issues and need for documentation from Defendant Kallis, Rance and Their Companies in order to be able to provide formal bank guarantee and avoid failure of contracts

xli. February 28, 2014 Email – Rance to Plaintiff and partner – will do nothing until after meeting with Plaintiff's financial consultant and noting the 1st Contract MIOKATE has "now lapsed without value" but subject to change in position after upcoming meeting.

xlii. March 4, 2014 Email Letters – Plaintiff served Notices of Default and Demanded Compliance – particularly the due diligence, KYC and proof of ownership and origin of clean funds documents

xliii. December 8, 2014 Email – Rance to Plaintiff's financial consultants confirming they will DO the MIOKATE and NIOMISA contracts first and then all other contracts, but Plaintiff must be excluded

xliv. December 10, 2014 Email – Rance to Plaintiff's financial consultants confirming meeting in January 2015 meeting but insisting that Plaintiff and his predecessors may not be included in meeting;

xlv. July 17, 2015 Email – Rance to Plaintiff's financial consultants suggesting meetings for September 2015

xlvi. September 21, 2015 Email – Rance to Plaintiff's financial consultants confirming meeting September 29, 2015 but again stating that Defendants Kallis, Rance and Their Companies refused to deal with Plaintiff

regarding completion of the MIOKATE and NIOMISA contracts and the other contract

151.    As of October 28, 2013, Plaintiff had fully complied with the requirements of the MIOKATE contract.

152.    As set forth in the above emails sent to Plaintiff in Florida, from October 29, 2013 onward, Defendants Kallis, Rance and Their Companies confirmed Plaintiff's compliance and that the $100,000,000 would be transferred. This was a lie.

153.    Contrary to the above specific representations and statements and the contract terms themselves, Defendants Kallis, Rance and Their Companies did not have absolute discretion, authority or control of the 1.368 billion US Dollars that were part of the contracts into which Plaintiff entered and which were being reinstated.

154.    From October 28, 2013 forward, Defendants Kallis, Rance and Their Companies lied and misled Plaintiff and failed to provide the due diligence, KYC, proof of ownership and origin of clean funds for the $ 1.368 billion dollars that they were allegedly holding, and which were allegedly being used for the above contracts.

155.    Notwithstanding Plaintiff's requests in meetings and letters/emails from October 2013 to end of January 2014, Defendants Kallis, Rance and Their Companies refused to provide Due Diligence, KYC, proof of ownership and origin of clean funds and Corporate Resolutions authorizing Transfer of Funds or „*Confirmation of Availability – or -Transfer of Funds"* in a form required by Plaintiff's bank.  See Plaintiff's letters/emails dated 28 & 30 Oct. 2013; 8, 11, 12, 20, 22 & 28 Nov. 2013; 5, 6, 9, 10, 11 & 12 Dec. 2013, and 22 Jan. 2014.

156.    In their effort to frustrate Plaintiff's ability to close the contracts Defendants Kallis, Rance and Their Companies produced false documents in which they

lied about Defendants Kallis, Rance and Their Companies' ability to provide the 1.368 billion in monies covered by the contracts and for which the $13.68 million in Advance Fees were paid.

157.    Defendants Kallis, Rance and Their Companies issued multiple false documents in November 201, December 2013, January 2014 and February 2014, in which they informed Plaintiff that the documents provided by him, his banks and financial consultants were acceptable and committing to closing and honoring the contracts.

158.    From October 2, 2013 to December 2015, Defendants Kallis, Rance and Their Companies and others conspired to conceal  (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held.

159.    From October 2, 2013 to December 2015, Defendants Kallis, Rance and Their Companies and others conspired to change the terms of the contracts, refused transfer the funds, refused to provide the required due diligence, KYC, proof of ownership and origin of clean funds and refused to cooperate with Plaintiff and Plaintiff's bank which was prepared to confirm receipt / acceptance of contract funds and issuance of bank guarantees, subject to receipt of the above due diligence documentation.

160.    From October 2, 2013 to December 2015, Defendants Kallis, Rance and Their Companies solicited further monies and things of value from Plaintiff, and Plaintiff's financial consultants with the "false" assurances that the 1.368 billion US Dollar contracts would be honored.

161.    In reality, Defendants Kallis, Rance and Their Companies used this time to stall and interfere with Plaintiff's efforts to discover (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that was supposed to be available for their contracts and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held.  They did this to buy themselves additional time in an attempt to conceal the trail and location of the $ 13.68 million US Dollars in Advance Fees paid and to interfere with Plaintiff's ability to locate and recover the monies.

162.    In one email from February 5, 2014, Defendants Kallis, Rance and Their Companies admitted that they did not have the absolute authority over the contract monies as was represented in the contracts themselves, that another entity / person had control over the monies and that the ultimate decision to provide contract monies was with an "unidentified lawyer" for an "unidentified trust".

163.    Further, in another email dated 5 February 2014 email, Defendants Kallis, Rance and Their Companies confirmed that (i) the entity to which the Advance Fees were paid was not a contracting party, (ii) the contract funds would be transferred from an as yet undisclosed account, (iii) the contracting party did not presently have any accounts at the bank from which the contract funds could or were to be transferred and (iv) the contract funds would be coming from persons / entities whose identity would be concealed and never disclosed and those people / entities were the true owner, with ultimate control and authority over the contract funds.

164.    These facts were contrary to the October 2, 2013 agreement and gave rise to a suggestion that Defendants Kallis, Rance and Their Companies were engaged in

money laundering, tax evasion and banking fraud and that the contracts were part of such activities.

165.    From January 2014 to end of December 2015, Plaintiff and his financial consultants tried to get Defendants Kallis, Rance and their Companies to cooperate with their bankers so that the contracts could be honored and completed and in particular Defendant Kallis, Rance and Their Companies (i) refused to disclose to Plaintiff's banker the identity of their banker; (ii) refused to meet with and make proper inquiry of Plaintiff's banker regarding the Specimen Bank Obligation; (iii) refused to participate in a meeting at Plaintiff's banker where the principals and the bankers could sit and conclude the business legally and in compliance with all rules, regulations and laws.

166.    From January 2014 to end of December 2015, Defendants Kallis, Rance and their Companies Rance and Kallis lied about deals they allegedly made which allegedly proved their ability to make the loan for which the $ 1.368 billion in contracts were made and the 13.68 million in Advance Fees were paid.

167.    From January 2014 to end of December 2015, Defendants Kallis, Rance and their Companies Rance lied about the source and origin of the contract monies, claiming the funds come from "Arab governments", the "funder is from Qatar" and later that the monies were from Russians.

168.    From January 2014 to end of December 2015, Defendants Kallis, Rance and their Companies Rance and Kallis lied about where the contract funds were being held and from which bank and accounts the contract funds would be transferred.

169.    At one time, saying the monies would come from Société General Group (KB Bank), and another time saying the funds will come from Eurobank (where Rance

said Kallis has $ 500 million in deposits) and later from UBS (the same bank where Rance said Kallis also had $ 500 million in deposits).

170.    During this period, Plaintiff discovered the existence of banks and banks accounts owned by Defendants Kallis, Rance and Their Companies:

a.  Cyprus Popular Bank, King Paul Street Branch, Larnaca, Cyprus – Account Name – Magnuline Enterprises Ltd. – Account # 048-33-013401 and Swift Code LIKI CY2N (US Dollar Account);

b.  Cyprus Popular Bank, King Paul Street Branch, Larnaca, Cyprus – Account Name – Inceptia Limited – Account # 048-33-028441 and Swift Code LIKI CY2N (US Dollar Account);

c.  Laiki Bank, King Paul Street Branch, Larnaca, Cyprus – Account Name – Hannon Co. Ltd. – Account # 048-33-028530 and Swift Code LAIKI CY 2N (US Dollar Account);

d.  Laiki Bank (Hellas S.A.), 16 Panepistimiou Street, 10672 Athens, Greece – Account Name – G.K. Banking Cons. & Management Co. – Account # 002-404655 (US Dollar Account);

e.  Laiki Bank (Hellas S.A.), 16 Panepistimiou Street, 10672 Athens, Greece – Account Name – G.K. Banking Cons. & Management Co. – Account # 002-404655 (US Dollar Account);

f.  Hellenic Bank, 2 Zenon Kitieus Branch (301), 6023 Larnaca, Cyprus, Account Name – G.K. Finance Limited, Account # 301-01-253494-01 (Swift Code HEBA CY 2N LAR);

g.  Hellenic Bank, Vasilisis Sofia Avenue 11 & Merlin, 10671 Athens, Greece, Account Name – G.K. Finance Ltd., Account # 676619 (Swift Code HEBAGRAA);

h.  Pireaus Bank, Larnaca Bus. Ctr, 6 Gr. Afxentiou Ave, 6023, Larnaca Cyprus, – Account Name - G.K. Finance Ltd., IBAN # CY32008003600000000000096027 (Swift Code PIRBCYZN);

i.  Alpha Bank, Cyprus (identity disclosed to Plaintiff by Rance and Kallis, but exact account information and account details were and continue to be concealed);

j.  Euro Bank, Cyprus (identity disclosed to Plaintiff by Rance and Kallis, but exact account information and account details were and continue to be concealed);

k.  Société General Bank (KB Bank) (identity disclosed to Plaintiff by Rance and Kallis, but exact account information and account details were and continue to be concealed); and

l.  USB Bank PLC, Larnaca, Cyprus Account Name - G.K. Finance Limited, Account # 144-2-0133619-12012, IBAN CY90 0110 0041 1442 0133 6191 2012 and SWIFT-BIC UNVKCY2N

171.   From January 2014 to end of December 2015, Defendants Kallis, Rance and their Companies continued to lie by saying the contracts were "funds first transactions" but then refusing to provide the required due diligence, KYC, proof of ownership and origin of clean funds that were required by Plaintiff's banks.

172.    From January 2014 to end of December 2015, Defendants Kallis, Rance and their Companies refused to cure Plaintiff's multiple Notices of Default and Demands to Cure  (See February 11, 2014 and March 4, 2014 letter examples).

173.    From January 2014 to present, Defendants Kallis, Rance and their Companies, with the help of Defendant Cyprus Banks and Defendant Law Offices and its agencies, have aided and abetted the laundering of the $ 1.368 billion US Dollars in contract funds and the civil theft of the 13.68 million US Dollars in Advance Fees.

D.  **Facts Related to the Wrongdoing of Defendants Central Bank of Cyprus Law Office, Clerides and Rossidou-Papakyriacou**

174.    Starting in 2012, Plaintiff began his efforts to discover why the investigations into Case # M/106/2002  (confirmed in Defendant Law Office letters of 20 February 2003 and 5 March 2005 letters) and Case # - 9 DOE - 317 / 2005 (confirmed to Plaintiff directly be in existence as of June 2012 which filed contained / contains in excess of 11 ring binders and thousands of documents – all of which have been withheld from Plaintiff) were never completed and the files were closed.

175.    From October 2, 2013 to May 2014, Plaintiff suspended his efforts to in this regard, because Plaintiff was induced to agree to the reinstatement of the contracts.

176.    However, in May 2014, Plaintiff filed a new criminal complaint with Defendant Law Offices related to the money laundering, tax evasion, civil theft and concealment of the (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held..   No action has been taken on complaint since its filing.

177.    In September 2017, Plaintiff was instructed by Defendant Law Offices and its agencies to file an updated criminal complaint related to the money laundering, tax evasion, civil theft and concealment of the (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held.  That updated complaint was filed.  However, no concrete action appears to have been taken on this complaint

178.    From August 2014 to December 2018, Defendant Law Offices and one or more of its agencies, came into this jurisdiction by sending emails and letters to Plaintiff from their official government email addresses to Plaintiff - faganinternational@gmail.com and his address 5708-01 Arbor Club Way, Boca Raton, FL. 33433 and his PO Box 880011, Boca Raton, FL  33431.  These emails include:

   i.   August 7, 2014 – Instructions by Police to communicate with Attorney General's offices

   ii.   October 21, 2014 – Email exchanges with Defendant Law Office

   iii.   April 15, 2015 - Email exchanges with Defendant Law Office

   iv.   April 28, 2015 - Email exchanges with Defendant Law Office (Ms. Kadi)

   v.   April 30, 2015 - Email exchanges with Defendant Law Office

   vi.   October 13, 2015 - Email exchanges with Defendant Law Office regarding meetings in Cyprus

   vii.   April 5, 2016 - Email from Michaela Pasiardis of Defendant Law Offices informing Plaintiff that the Chief of Police has reopened the 2002 / 2005 cases and new investigations are being held

viii.   May 11, 2015 Email - from Michaela Pasiardis of Defendant Law Office explaining Chief of Police will give a full report to Defendant Law Office which will then back to Plaintiff

ix.   March 17, 2016 - Email Cyprus Police to Plaintiff regarding report to Defendant Law Office with evidence and request for new instructions

x.   May 6, 2016 - Email Cyprus Police to Plaintiff scheduling meetings

xi.   May 12, 2016 - Email Cyprus Police to Plaintiff requesting specific additional information

xii.   May 13, 2016 – Email exchanges with information and potential list of witnesses

xiii.   June 29, 2016 – Email from Cyprus Police scheduling meetings in Cyprus

xiv.   October 27, 2016 – Email from Cyprus Police requesting new written statement and evidence

xv.   February 17, 2017 – Email from Cyprus Police email scheduling meeting in Cyprus

xvi.   July 3, 2017 – Email from Cyprus Police scheduling meeting in Cyprus

xvii.   November 10, 2017 – Email from Cyprus Police email scheduling meeting

xviii.   January 31, 2018 – Email from Cyprus Police telling Plaintiff to send official letter and you will receive a response

xix.   June 29, 2018 – Plaintiff Letter Requesting information

xx.   August 9, 2018 – Email from Cyprus Police to Plaintiff

179.   Each of these emails and communications directed to Plaintiff were designed and intended to further delay and frustrate Plaintiff's ability to (i) compel Defendants Kallis, Rance and Their Companies to complete the contracts; (ii) identify of

the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (iii) the identity of the bank(s) into which the Advance Fees were deposited and are being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

180.    In the summer of 2016, Plaintiff gained access to the files of the Swiss Prosecutor in St. Gallen who started complaint Case # M/106/2002 against Defendants Kallis, Rance and Their Companies.

181.    The evidence in those files included correspondence going back and forth in 2002 between the Swiss Prosecutor and Defendant Rossidou-Papkyriakou of Defendant Law Offices and its agency MOKAS.  That correspondence was provided to but ignored by Defendant Law Offices in relation to the 2017 complaint made by Plaintiff in Cyprus.

182.    The evidence obtained from the Swiss Prosecutor in 2016, confirmed that Defendant Rossidou-Papkyriakou lied to and misled the Swiss Prosecutor by claiming that (i) the authorities in Cyprus were actively investigating Defendants Kallis, Rance and Their Companies, and would prosecute them; and (ii) the authorities in Cyprus knew that Defendants Kallis, Rance and Their Companies were paying commissions from the Advance Fees to persons and entities whose identities were not yet known to but would be discovered in the Cyprus investigations.

183.    The evidence obtained from the Swiss Prosecutor's file also showed and proved Defendants Kallis, Rance and Their Companies (i) agents and brokers in the

United States; (ii) solicitation of contracts and Advance Fees from persons in the United States; and (iii) wire transfers from US Bank accounts to accounts in Cyprus as part of the Advance Fees and contracts.

184.    The evidence obtained from the Swiss Prosecutors file in 2016 was provided to the Cyprus Police acting with instructions of Defendant Law Offices, with cover statements outlining the corruption and wrongdoing of Defendants Law Offices, Clerides and Rossidou-Papkyriakou and their protection of Defendants Kallis, Rance and Their Companies as well as their interference with Plaintiff's efforts to (i) identify of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) identity of the bank(s) into which the Advance Fees were deposited and are being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

185.    The evidence obtained from the Swiss Prosecutor's file in 2016 appears to have been ignored by Defendant Law Offices in relation to the reinstated complaints and investigations (Case # M/106/2002 and Case # - 9 DOE - 317 / 2005), the 2014 Complaint and the 2017 Complaint File No. GOE 79/2017.

186.    In June 2018, in support of the investigations into the reinstated complaints and investigations (Case # M/106/2002 and Case # - 9 DOE - 317 / 2005), the 2014 Complaint and the 2017 Complaint File No. GOE 79/2017. Plaintiff secured and produced to Defendant Law Offices a Sworn Statement confirming corruption, wrongdoing and conspiracy between Defendant Law Office, its agent Defendant

Rossidou-Papakyriakou and Defendant Kallis.  In that sworn statement, Plaintiff provided evidence of Defendant Rance's personal statements in or about 2004/2005 that:

    a.   no one could "touch" Defendants Kallis, Rance and Their Companies or the persons / entities behind them and that all efforts to try to get them to comply with the contracts or to secure the return of the millions in Advance Fees, were futile as Defendants Kallis, Rance and Their Companies and the persons / entities behind them were protected by Cyprus authorities;

    b.   Defendants Kallis, Rance and Their Companies had people very high in the Cyprus Attorney General's office, the Cyprus investigating authorities' offices and in the Cyprus government who would make sure that no complaint could ever proceed against them and that they were "protected"; and

    c.   one of the persons protecting Defendants Kallis, Rance and Their Companies is/was Mrs. Eva Rossidou-Papakyriacou, who was related to Kallis himself.

    187.    From 2012 to present, Defendant Law Offices and its agencies have failed to perform non-discretionary duties to investigate and act upon the multiple complaints and reinstated complaints against Defendants Kallis, Rance and Their Companies and Defendant Cyprus Banks and Defendant Law Offices agents Defendant Clerides and Rossidou-Papakyriakou and have conspired to prevent the (i) identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) identification of the bank(s) into which the Advance Fees were deposited and are being held so that Plaintiff could take

action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

188.    From 2012 to present, Defendant Law Offices and its agencies have interfered with Plaintiff's efforts to (i) identify of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (ii) identity of the bank(s) into which the Advance Fees were deposited and are being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

189.    From 2000 to present, Defendant Central Bank of Cyprus has (i) failed to monitor Defendant Banks and Defendants Kallis, Rance and Their Companies, which are operating as financial services entities and at times which masquerated and held themselves out as "Banks" and (ii) failed to monitor these defendants as they laundered 1.368 billion US DOLLARS through the contracts mentioned.

## VIII.  **DESCRIPTION OF CRIMINAL ENTERPRISE**

190.    The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely, through a multi-faceted campaign of lies, deceit, creation of false documents, interference with rights, expropriations and interference with contracts.

191.    The RICO Defendants and their coconspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating out of Cyprus which targeted Plaintiff and other "investors" from the United States, who would be enticed into contracts that would never been honored or performed but which contracts would be used to launder 1.368 billion in US dollars, through a series of US banks accounts and correspondent banks, and then to also misappropriate, steal and convert Advance Fees amounting to 13.68 million in US Dollars which were paid in good faith to secure the 1.368 billions in US dollars for the contracts which would allow Plaintiff to have engaged in lawful business development, infrastructure projects and trading.

192.    During the period from 2000 to present, the RICO Defendants adapted their plan and scheme to the changing circumstances as Plaintiff and his predecessors sought to either (i) secure performance on the contracts or (ii) identify the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  with no supervision by Defendant Central Bank of Cyprus or (iii) identify the bank(s) into which the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

193.    While the organization of the criminal enterprise has changed over time, and some of its members may have held different roles at different times, the criminal enterprise has generally been structured so as to operate as a unit in order to accomplish the goals of their criminal scheme to (i) launder 1.368 billion in US

Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) have conspired to prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  with no supervision by Defendant Central Bank of Cyprus  and (viii) have conspired to prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

194.    In furtherance of the fraudulent scheme and criminal enterprise, from 2000 forward, Defendants Kallis, Rance and Their Companies wanted to stop or delay Plaintiff from continuing his efforts to discover (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by

Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the

Advance Fees were deposited and are being held.

195.    To do that from May 2013 to October 2, 2013, Defendants Kallis, Rance

and The Companies sent knowingly false statements intended to deceive and mislead

Plaintiff from continuing efforts to discover (i) the identity of the persons / entities who

were the owners / beneficial owners of the 1.368 billion in US dollars that were being

moved (laundered) through Defendant Cyprus Banks with no supervision or controls by

Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the

Advance Fees were deposited and are being held.

196.    These false statements were sent by letter and email to Plaintiff in Florida

and included Emails and Letters from Defendant's Kallis, Rance and their company

emails - brian.r@cytanet.com.cy, fintopltd@cytanet.com.cy,

gkfinanceltd@cytanet.com.cy "gkfinan1@cytanet.com.cy" and gkallis@cytanet.com.cy

sent to Plaintiff - faganinternational@gmail.com and his address 5708-01 Arbor Club

Way, Boca Raton, FL. 33433 and his PO Box 880011, Boca Raton, FL  33433.

197.    From May 2013 to October 2013, Defendants Kallis, Rance and The

Companies sent the following letters and emails sent to Plaintiff in Florida as part of

solicitations and inducements to Plaintiff to Enter into New Contracts or to Agree to Re-

Instatement of the Prior Contracts, but were in fact part of the efforts to deceive and

mislead Plaintiff from continuing efforts to discover (i) the identity of the persons /

entities who were the owners / beneficial owners of the 1.368 billion in US dollars that

were being moved (laundered) through Defendant Cyprus Banks with no supervision or

controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into

which the Advance Fees were deposited and are being held.  The letters and emails

included:

    i.        May 13, 2013 Email – Rance to Plaintiff

    ii.       June 10, 2013 Email – Rance to Plaintiff

    iii.      June 11, 2013 Email – Rance to Plaintiff setting meetings in Cyprus

    iv.      June 13, 2013 Emailed Letter – Rance to Plaintiff

    v.        June 13, 2013 Email – Rance to Plaintiff

    vi.      June 19, 2013 Email – Rance to Plaintiff with suggested guarantee
             documents

    vii.      June 21, 2013 Emails (2) – Rance to Plaintiff

    viii.    July 1, 2013 Email – Rance to Plaintiff

    ix.      July 12, 103 Email – Rance to Plaintiff

    x.        July 15, 2013 Email – Rance to Plaintiff

    xi.      July 22, 2013 Emails (2) – Rance to Plaintiff (with specimens of Bank
             Guarantee)

    xii.     July 26, 2013 Email – Rance to Plaintiff regarding reinstatement of
             first two contracts and commitments to reinstate all other contracts in
             order

    xiii.    August 5, 2013 Emails (2) – GK Finance and Rance to Plaintiff

    xiv.    August 19, 2013 Email – GK Finance to Plaintiff

    xv.     August 20, 2013 Email (2) – Rance to Plaintiff

    xvi.    August 26, 2013 Email (2) – Rance to Plaintiff (re required security
             and contract reissuance and beginning of concealment of due diligence

information related to bank at which contract funds were held and the proof / origin of clean funds)

xvii.     August 29, 2013 Email – Rance to Plaintiff

xviii.    September 4, 2013 Email – Rance to Plaintiff (re continuing to withhold due diligence information related to bank at which contract funds were held and the proof / origin of clean funds)

xix.      September 9, 2013 Emails (2)  – Rance to Plaintiff (confirming re-instatement of all contracts in serial order)

xx.       September 20, 2013 Emails (2) – Rance to Plaintiff with email from Kallis (with terms and solicitation of new offer)

xxi.      September 23, 2013 Email – Rance to Plaintiff regarding meeting with Kallis and demand for changes to proposed Bank Guarantee

xxii.     September 25, 2013 Email – Rance to Plaintiff regarding meeting with Kallis and the outstanding issue of due diligence documents / information being withheld from Plaintiff

xxiii.    September 30, 2013 Email – Rance to Plaintiff

xxiv.     October 1, 2013 Email – Rance to Plaintiff regarding offer to reinstate contracts

198.    In furtherance of the RICO conspiracy and fraud, Defendants Kallis, Rance and Their Companies used the above 24 emails and communications directed to Plaintiff in Florida and offering to reinstate all the contracts for which the 13.68 million in Advance Fees were paid and thereby make available the 1.368 billion in US Dollars for the infrastructure projects and trading platforms, which contracts Defendants Kallis, Rance and Their Companies never intended to honor the contracts but used this offer as a

means to interfere with Plaintiff's efforts (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , and (ii) the identity of the bank into which the Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

199.   In furtherance of the RICO conspiracy and fraud, Defendants Kallis, Rance and Their Companies used the above 24 emails and letters to induce Plaintiff to stop efforts to get the return of the Advance Fees and to stop potential new investigations with Defendants Law Office and their agencies.

200.   Each of the above 24 emails and letters sent by Defendants Kallis, Rance and Their Companies to Plaintiff in Florida contained misrepresentations of fact and concealed their true motives which were to (i) launder the 1.368 billion in US Dollars using Plaintiff's contracts as the vehicle by which to move the monies, (ii) use their offers to reinstate and honor the contracts as a means to interfere with Plaintiff's efforts to the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , and (iii) use the offers to reinstate and honor the contracts as a means to interfere with Plaintiff's ability to identity the bank into which the Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

201.   In furtherance of the RICO conspiracy and fraud, Defendants Kallis, Rance and Their Companies used the above 24 emails and communications directed to Plaintiff in Florida and offering to reinstate all the contracts for which the 13.68 million in Advance Fees were paid and thereby make available the 1.368 billion in US Dollars

for the infrastructure projects and trading platforms, which contracts Defendants Kallis,

Rance and Their Companies never intended to honor the contracts but used this offer as a

means to interfere with Plaintiff's efforts (i) the identity of the persons / entities who

were the owners / beneficial owners of the 1.368 billion in US dollars that were being

moved (laundered) through Defendant Cyprus Banks with no supervision or controls by

Defendant Central Bank of Cyprus , and (ii) the identity of the bank into which the

Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

202.    In furtherance of the RICO conspiracy and fraud, Defendants Kallis,

Rance and Their Companies used the above 24 emails and letters to induce Plaintiff to

stop efforts to get the return of the Advance Fees and to stop potential new investigations

with Defendants Law Office and their agencies.

203.    Each of the above 24 emails and letters sent by Defendants Kallis,

Rance and Their Companies to Plaintiff in Florida contained misrepresentations

of fact and concealed their true motives which were to (i) launder the 1.368

billion in US Dollars using Plaintiff's contracts as the vehicle by which to move

the monies, (ii) use their offers to reinstate and honor the contracts as a means to

interfere with Plaintiff's efforts to the identity of the persons / entities who were the

owners / beneficial owners of the 1.368 billion in US dollars that were being moved

(laundered) through Defendant Cyprus Banks with no supervision or controls by

Defendant Central Bank of Cyprus , and (iii) use the offers to reinstate and honor the

contracts as a means to interfere with Plaintiff's ability to identity the bank into which the

Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

204.    Next from October 2013 to December 2015, Defendants Kallis, Rance and

The Companies sent the following letters and emails sent to Plaintiff in Florida as part of

solicitations and inducements to Plaintiff to Enter into New Contracts or to Agree to Re-Instatement of the Prior Contracts, but were in fact part of the efforts to deceive and mislead Plaintiff from continuing efforts to discover (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) the identity of the bank(s) into which the Advance Fees were deposited and are being held.  The letters and emails included:

 i.  October 4, 2013 Email – Rance's assistant to Plaintiff

 ii.  October 14, 2013 Email – Rance to Plaintiff with Email from GKF to Rance to Plaintiff

 iii.  October 15, 2013 Emails (2) – Rance to Plaintiff

 iv.  October 17, 2013 Email –Plaintiff to Rance requesting and Rance's response regarding due diligence documents

 v.  October 18, 2013 Email – Rance to Plaintiff scheduling meetings but refusing to address issue of outstanding due diligence documents

 vi.  October 21, 2013 Email – Rance to Plaintiff with non-responsive due diligence documents

 vii.  October 21, 2013 Emails (3) and one Letter – Rance to Plaintiff explaining reason why they used wrong name of company used in reinstated contract and setting new meetings

 viii.  October 23, 2013 Email – Rance to Plaintiff setting meetings

 ix.  October 25, 2013 Emails (2) and One Letter – Rance to Plaintiff

 x.  October 28, 2013 Email – Rance to Plaintiff

xi.     October 30, 2013 Email – Rance to Plaintiff

xii.    October 31, 2013 Emails (2) – Rance to Plaintiff

xiii.   November 6, 2013 Emails (2) – Rance to Plaintiff

xiv.    November 8, 2013 Email – Rance to Plaintiff

xv.     November 12, 2013 Email – Rance to Plaintiff (offering new contract)

xvi.    November 14, 2013 Email – Rance to Plaintiff

xvii.   November 16, 2013 Email – Rance to Plaintiff

xviii.  November 20, 2013 Email – Rance to Plaintiff regarding closing dates.

xix.    November 22, 2013 Email – Rance to Plaintiff with account
        information regarding Defendants Kallis, Rance and Their Companies
        bank accounts in Larnaca

xx.     November 25, 2013 Email – Rance to Plaintiff

xxi.    November 27, 2013 Email – Rance to Plaintiff

xxii.   November 29, 2013 Emails (3) – Rance to Plaintiff explaining that all
        Plaintiff's documents passed Kallis due diligence requirements, but
        refusing to identify who was described as "the trust" or "trustee" that
        controlled the contracts, notification that banks would not provide due
        diligence and KYC information in bank to bank contact and explaining
        closing schedule and approximate dates when monies would be
        transferred

xxiii.  December 4, 2013 Email and Letter – Rance to Plaintiff (confirming
        Plaintiff documents received and accepted for first two contracts,
        offering new possible contracts and confirming that Kallis would "re-
        issue all old contracts each as a stand-alone transaction"

xxiv.   December 8, 2013 Email – Rance to Plaintiff regarding delayed closing dates

xxv.   December 9, 0213 Email(s) – Rance to Plaintiff apologizing about behavior and scheduling meeting and requesting that emails only be sent to business email addresses

xxvi.   December 10, 2013 Emails – Rance to Plaintiff discussing security and Kallis discussions with "trustee" whose name and identity was concealed from Plaintiff

xxvii.   December 12, 2013 Email – Rance to Plaintiff – Plaintiff's documents were in order but must be re-assembled.

xxviii.   December 13, 2013 Emails (2) – Rance to Plaintiff's re-assembled documents in order, accepted and transmitted for closing and scheduling meeting for following week

xxix.   January 6, 2014 Email – Rance to Plaintiff – scheduling meetings for mid-January 2014 at which closing date would be set and including additional offer of new contracts

xxx.   January 7, 2014 Email – Rance to Plaintiff – confirming meetings, approval by Kallis and reaffirming that contracts will be done one by one starting with MIOKATE

xxxi.   January 20, 2014 Email – Rance to Plaintiff– rescheduling meetings and delaying closing

xxxii.   January 23, 2014 Email and Letter – Rance to Plaintiff

xxxiii.  January 23, 2014 Email and Letter – Rance to Plaintiff (refusing to provide due diligence documents including proof of and origin of clean funds)

xxxiv.  January 28, 2014 Email – Rance to Plaintiff (refusing to provide proof of funds and insisting that Defendants Kallis, Rance and Their Companies could speak directly to Plaintiff's bank / bankers, but Plaintiff's bank / bankers could not speak to Defendant Kallis, Rance and Their Companies' bank

xxxv.  January 29, 2014 Email – Rance and GK Finance to Plaintiff (setting meeting to discuss outstanding issues and then rescheduling meetings at last minute)

xxxvi.  February 3, 2014 Email and Letter – Rance to Plaintiff, partners and agents (coming from susie@cytanet.com.cy) – demanding information from Plaintiff's bank but refusing to provide due diligence KYC and proof of and origin of clean funds documents

xxxvii.  February 4, 2014 Email – attempting to explain or justify refusal to provide due diligence, KYC and proof of ownership and origin of clean funds

xxxviii. February 17, 2014 Email and Letter – Rance to Plaintiff, partners and agents (email and letter transmitted from susie@cytanet.com.cy) – demanding information from Plaintiff's bank but refusing to provide due diligence, KYC and proof of ownership and origin of clean funds documents

xxxix.   February 20, 2014 Email – Rance to Plaintiff refusing meetings and
continuing to refuse to provide due diligence, KYC and proof of
ownership and origin of clean funds documents thereby making it
impossible for Plaintiff and its bank to agree to receive funds (not
knowing they were clean and legal) and impossible to produce
necessary bank guarantees

xl.   February 21, 2014 Email – Rance to Plaintiff's agents and consultants
– agreeing to reschedule of meetings to discuss in person the KYC
issues and need for documentation from Defendant Kallis, Rance and
Their Companies in order to be able to provide formal bank guarantee
and avoid failure of contracts

xli.   February 28, 2014 Email – Rance to Plaintiff and partner – will do
nothing until after meeting with Plaintiff's financial consultant and
noting the 1st Contract MIOKATE has "now lapsed without value" but
subject to change in position after upcoming meeting.

xlii.   March 4, 2014 Email Letters – Plaintiff served Notices of Default and
Demanded Compliance – particularly the due diligence, KYC and
proof of ownership and origin of clean funds documents

xliii.   December 8, 2014 Email – Rance to Plaintiff's financial consultants
confirming they will DO the MIOKATE and NIOMISA contracts first
and then all other contracts, but Plaintiff must be excluded

xliv.   December 10, 2014 Email – Rance to Plaintiff's financial consultants
confirming meeting in January 2015 meeting but insisting that Plaintiff
and his predecessors may not be included in meeting;

xlv.    July 17, 2015 Email – Rance to Plaintiff's financial consultants suggesting meetings for September 2015

xlvi.    September 21, 2015 Email – Rance to Plaintiff's financial consultants confirming meeting September 29, 2015 but again stating that Defendants Kallis, Rance and Their Companies refused to deal with Plaintiff regarding completion of the MIOKATE and NIOMISA contracts and the other contract.

205.    In furtherance of the RICO conspiracy and fraud, Defendants Kallis, Rance and Their Companies used the above 46 emails and communications from October 2, 2013 to September 21, 2015 all of which were directed to Plaintiff in Florida and offering to first reinstate and then honor all the contracts for which the 13.68 million in Advance Fees were paid and thereby make available the 1.368 billion in US dollars for the infrastructure projects and trading platforms, which contracts Defendants Kallis, Rance and Their Companies never intended to honor the contracts but used this offer as a means to interfere with Plaintiff's efforts (i) the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , and (ii) the identity of the bank into which the Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

206.    In furtherance of the RICO conspiracy and fraud, Defendants Kallis, Rance and Their Companies used the above 46 emails and communications from October 2, 2013 to September 21, 2015 all of which were directed to Plaintiff in Florida to induce Plaintiff to stop efforts to get the return of the Advance Fees and to stop potential new investigations with Defendants Law Office and their agencies.

207.   Each of the above 46 emails from used the above 46 emails and communications from October 2, 2013 to September 21, 2015 all of which were directed to Plaintiff in Florida contained misrepresentations of fact and concealed their true motives which were to (i) launder the 1.368 billion in US Dollars using Plaintiff's contracts as the vehicle by which to move the monies, (ii) use their offers to reinstate and honor the contracts as a means to interfere with Plaintiff's efforts to the identity of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , and (iii) use the offers to reinstate and honor the contracts as a means to interfere with Plaintiff's ability to identity the bank into which the Advance Fee was being held, was part of the ongoing conspiracy against Plaintiff.

208.   Also in furtherance of the RICO conspiracy and scheme, from August 2014 to December 2018, Defendant Law Offices and one or more of its agencies, came into this jurisdiction by sending emails and letters to Plaintiff from their official government email addresses to Plaintiff - faganinternational@gmail.com and his address 5708-01 Arbor Club Way, Boca Raton, FL. 33433 and his PO Box 880011, Boca Raton, FL  33431.  These emails include:

i.      August 7, 2014 – Instructions by Police to communicate with Attorney General's offices

ii.     October 21, 2014 – Email exchanges with Defendant Law Office

iii.    April 15, 2015 - Email exchanges with Defendant Law Office

iv.     April 28, 2015 - Email exchanges with Defendant Law Office (Ms. Kadi)

v.        April 30, 2015 - Email exchanges with Defendant Law Office

vi.      October 13, 2015 - Email exchanges with Defendant Law Office regarding meetings in Cyprus

vii.    April 5, 2016 - Email from Michaela Pasiardis of Defendant Law Offices informing Plaintiff that the Chief of Police has reopened the 2002 / 2005 cases and new investigations are being held

viii.   May 11, 2015 Email - from Michaela Pasiardis of Defendant Law Office explaining Chief of Police will give a full report to Defendant Law Office which will then back to Plaintiff

ix.     March 17, 2016 - Email Cyprus Police to Plaintiff regarding report to Defendant Law Office with evidence and request for new instructions

x.      May 6, 2016 - Email Cyprus Police to Plaintiff scheduling meetings

xi.     May 12, 2016 - Email Cyprus Police to Plaintiff requesting specific additional information

xii.    May 13, 2016 – Email exchanges with information and potential list of witnesses

xiii.   June 29, 2016 – Email from Cyprus Police scheduling meetings in Cyprus

xiv.   October 27, 2016 – Email from Cyprus Police requesting new written statement and evidence

xv.    February 17, 2017 – Email from Cyprus Police email scheduling meeting in Cyprus

xvi.   July 3, 2017 – Email from Cyprus Police scheduling meeting in Cyprus

xvii.    November 10, 2017 – Email from Cyprus Police email scheduling meeting

xviii.    January 31, 2018 – Email from Cyprus Police telling Plaintiff to send official letter and you will receive a response

xix.    June 29, 2018 – Plaintiff Letter Requesting information

xx.    August 9, 2018 – Email from Cyprus Police to Plaintiff

209.    Each of the above twenty emails and communications directed to Plaintiff in Florida by Defendants Law Offices and its agents were sent in furtherance of the RICO conspiracy and scheme and were intended to further delay and frustrate Plaintiff's ability to (i) compel Defendants Kallis, Rance and Their Companies to complete the contracts; (ii) identify of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (iii) the identity of the bank(s) into which the Advance Fees were deposited and are being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

210.    The RICO Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), referred to hereinafter as the "Enterprise."

211.    Each of the RICO Defendants participated in the operation or management of the Enterprise.

212.    At all relevant times, the Enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 USC § 1962(c).

**RICO Enterprise's Pattern of Racketeering Activity in Violation of US Laws**

213.    The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 USC § 1961(5) and in violation of 18 USC § 1962(c).

214.    However, the person or entity who / which is truly behind the money laundering and other wrongdoing is the person / entity who is / was the owner of the 1.368 billion in US dollars that was being used to entice Plaintiff and others to enter into the contracts, pay advance fees which would be stolen and which 1.368 billion in US dollars would be laundered with the help of Defendants Rance, Kallis and Their Companies, Defendant Cyprus Banks and Defendant Law Offices representatives Clerides and Rossidou-Papakyriacou.

**RICO Enterprise's Pattern of Racketeering Activity in Violation of Florida Laws**

215.    The RICO Defendants conduct was in violation of Florida Communications Fraud Act, Fl. Stat. 817.04  which prohibited the use of mail and emails to obtain property from a person by false pretenses, misrepresentations and promises that are never fulfilled.  See

(http://www.leg.state.fl.us/Statutes/index.cfm?App_mode=Display_Statute&URL=0800-0899/0817/Sections/0817.034.html)

216.    The RICO Defendants conduct was prohibited by Florida RICO Laws. See Fl. Stat. 895.01 et seq.

http://www.leg.state.fl.us/Statutes/index.cfm?App_mode=Display_Statute&URL=0800-0899/0895/0895.html

217.    The RICO Defendants conduct is ongoing within the meaning of Florida RICO Law. See

http://www.leg.state.fl.us/Statutes/index.cfm?App_mode=Display_Statute&URL=0800-0899/0895/0895.html.

218.    The RICO Defendants conduct was prohibited by Florida Laws regarding Theft Fl. Stat. 812.012 (c ) and (d) et seq. and demand was made pursuant to Fl. Stat. 772.11 for the return of Plaintiff's 13.68 million in Advance Fees which has been refused.

219.    In addition to the money laundering of 1.368 billion in US Dollars that was made possible because of the "contracts" to which Defendants Kallis, Rance and Their Companies induced Plaintiff and his predecessors, the RICO Defendants stole, misappropriated and converted Plaintiffs' 13.68 million of the Advance Fees from the contracts that Defendants Kallis, Rance and Their Companies refused to perform; which theft, misappropriation and conversion was by (i) wrongful taking of 13.68 million US DOLLARS, (ii) obtaining 13.68 million US DOLLARS unlawfully under false pretense, (iii) withholding 13.68 million US DOLLARS and an accounting thereof from Plaintiff; and (iv) by treachery, embezzlement and other false pretenses in violation of the above Florida laws.

220.    The RICO Defendants' theft, misappropriation, conversion and retention of Plaintiff's monies and contract rights is valued in excess of $ 13.68 million dollars.

**RICO Enterprises Pattern of Racketeering Activity**
**Multiple Instances of Mail and Wire Fraud in Violation of 18 USC §§ 1341, 1343**

221.     As described herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to accomplish the goals of their criminal scheme which were to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) have conspired to prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (viii) have conspired to prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

222.     As explained above, in furtherance of their scheme, the RICO Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures,

and sounds, and also caused matters and things to be placed in any postal facilities or authorized depositories, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate and international carrier, including, but not limited to, the following: (i) the 24 emails and/or letters from Defendants Kallis, Rance and Their Companies to Plaintiff in Florida between 2012 to October 2013; (ii) the 46 emails and/or letters from Defendants Kallis, Rance and Their Companies to Plaintiff in Florida between October 2013 to September 2015; and (iii) the 20 emails and/or letters from Defendants Law Offices to Plaintiff in Florida between August 2014 to September 2018.

223.    Each of the above emails and letters, when taken as a whole were part and in furtherance of the conspiracy and criminal scheme to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) have conspired to prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that

were supposed to be paid to Plaintiff pursuant to the contracts but which were actually

being moved (laundered) through Defendant Cyprus Banks with no supervision or

controls by Defendant Central Bank of Cyprus  and (viii) have conspired to prevent the

identification of the bank(s) into with the Advance Fees were being held so that Plaintiff

could take action to recover the Advance Fee monies that were being wrongfully

withheld in unknown accounts.

224.    Each of the above emails and letters, when taken as a whole were part and

in furtherance of the conspiracy and criminal scheme and were intended to conceal

each of the RICO Defendants individual wrongful acts and from being held

accountable to Plaintiff and to the criminal investigating authorities.

225.    Each of the above 60 emails and letters from Defendants Kallis, Rance

and Their Companies to Plaintiff in Florida and the 20 emails and/or letters from

Defendants Law Offices to Plaintiff in Florida show the uses of wire and mail

communications in furtherance of the RICO Defendants' criminal scheme or artifice

to defraud that constitute violations of 18 USC §§ 1341 and 1443, and which also

show that Defendants specific defendant caused the communication to be mailed or

wired or transmitted, when the communication was made, and how it furthered the

fraudulent scheme.

226.    The RICO Defendants participated in the common scheme or artifice

knowingly, willfully, and with the specific intent to deceive and/or defraud Plaintiff

and his predecessors and financial advisors as well as to (i) launder 1.368 billion in US

Dollars; (ii) create and use "contract" that were never to be honored or performed as the

means by which to move the 1.368 billion in US Dollars from account(s) where they

could not be used to other accounts where they were ostensibly clean; (iii) to create and

use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (viii) prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

227.    Each of the above 80 emails and letters sent by Defendants Kallis, Rance and their experts and Defendant Law Offices were relied upon and have Plaintiff substantial damages.


### RICO Enterprise's Pattern of Racketeering Activity
### Money Laundering in Violation of 18 USC § 1956 (a) (1) (A), (B) et seq.

228.    18 USC § 1956 et seq provides in pertinent part that it shall be unlawful to knowingly use: *(a) (1) property involved in a financial transaction (that) represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity (A)*

*(i) with the intent to promote the carrying on of specified unlawful activity; or. . . (B) knowing that the transaction is designed in whole or in part . . . (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .*

229.     The RICO Defendants, specifically Defendants Kallis, Rance and Their Companies and Defendant Cyprus Banks knowingly used the 1.368 billion in US Dollars from the contracts with Plaintiff and his predecessors to generate fees and other benefits for themselves and to promote the private economic interests of themselves, their companies and they did so by disguising the true origin and source and ownership of the 1.368 billion in US Dollars.

230.     The RICO Defendants, specifically Defendants Kallis, Rance and Their Companies, knowingly used Plaintiff's 13.68 million in Advance Fees to promote the private economic interests of themselves, their companies and did so by disguising the true origin and source and ownership of the property.

231.     The RICO Defendants, specifically Defendants Law Office representatives Clerides and Rossidou-Papakyriacou, knowingly and wrongly and in direct violation of their official duties, (i) allowed 1.368 billion in US Dollars from the contracts with Plaintiff and his predecessors to be laundered through Defendant Cyprus Banks and assisted in allowing the concealment of true origin and source and ownership of the 1.368 billion in US Dollars, (ii) allowed Defendants Kallis, Rance and Their Companies to convert 13.68 million in Advance Fees and to disguise the true origin and source and ownership of the monies, (iii) prevented Plaintiff from being able to identify the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were

actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (iv) prevented Plaintiff from being able to identify of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.  Defendants Law Office representatives Clerides and Rossidou-Papakyriacou did so to promote their own private economic interests.

232.    As a direct and proximate cause of Defendants foregoing actions in furtherance of the RICO criminal money laundering scheme the RICO Defendants have knowingly caused the transportation, transmission, and/or transfer of funds to or from or through the United States to themselves or other entities over which they had control or authority with the intent that those funds would continue to be used to promote the carrying on of unlawful activity in violation of 18 U.S.C. §§ 1341, 1343 and 1951, all of which was to Plaintiff's detriment.

## IX.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION - VIOLATION OF RICO, 18 USC § 1962(c)

233.    Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

234.    As used hereinafter, for purposes of the RICO allegations, Defendants Kallis, Rance and Their Companies, Defendant Cyprus Banks, Defendant Bank of Cyprus, Defendant Law Offices of Cyprus and Defendants Doe are and shall be collectively referred to as the RICO Defendants.

235.    18 USC § 1961 et seq. provides, in pertinent part, that: *(1)*
*"racketeering activity" means (A) any act or threat involving . . . bribery, extortion . . . ;*
*(B) any act which is indictable under any of the following provisions of title 18, United*
*States Code: Section 201 (relating to bribery) . . . section 1341 (relating to mail fraud),*
*section 1343 (relating to wire fraud) . . . section 1503 (relating to obstruction of justice),*
*. . . section 1951 (relating to interference with commerce, robbery, or extortion), section*
*1952 (relating to racketeering) . . . section 1957 (relating to engaging in monetary*
*transactions in property derived from specified unlawful activity) . . . "State" means any*
*State of the United States, the District of Columbia, the Commonwealth of Puerto Rico,*
*any territory or possession of the United States, any political subdivision, or any*
*department, agency, or instrumentality thereof; (3) "person" includes any individual or*
*entity capable of holding a legal or beneficial interest in property; (4) "enterprise"*
*includes any individual, partnership, corporation, association, or other legal entity, and*
*any union or group of individuals associated in fact although not a legal entity; (5)*
*"pattern of racketeering activity" requires at least two acts of racketeering activity, one*
*of which occurred after the effective date of this chapter and the last of which occurred*
*within ten years (excluding any period of imprisonment) after the commission of a prior*
*act of racketeering activity . . .*

236.    18 USC § 1962, provides, in pertinent part, that  *(a) It shall be unlawful*
*for any person who has received any income derived, directly or indirectly, from a*
*pattern of racketeering activity . . .  (and use or investment), directly or indirectly, any*
*part of such income, or the proceeds of such income, in acquisition of any interest in, or*
*the establishment or operation of, any enterprise which is engaged in, or the activities of*
*which affect, interstate or foreign commerce . . . (b) It shall be unlawful for any person*

*through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce . (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . . (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.*

237.    18 USC § 1341 – Frauds and Swindles - provides, in pertinent part, that: *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.*

238.    18 USC § 1343 – Fraud by Wire, provides, in pertinent part, that: *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television*

*communication in interstate or foreign commerce, any writings, signs, signals, pictures,*

*or sounds for the purpose of executing such scheme or artifice, shall be fined under this*

*title or imprisoned not more than 20 years, or both*

239.    18 USC § 1349 – Attempts and Conspiracy - provides, in pertinent

part, that: *Any person who attempts or conspires to commit any offense under this*

*chapter shall be subject to the same penalties as those prescribed for the offense, the*

*commission of which was the object of the attempt or conspiracy.*

240.    At all relevant times, Defendants Kallis, Rance and Their Companies,

Defendant Cyprus Banks, Defendant Law Offices of Cyprus, Defendants Doe are

persons within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

241.    As a general matter and by way of summary of the facts set forth

elsewhere herein, the Defendants criminal money laundering scheme and enterprise

was and is to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that

were never to be honored or performed as the means by which to move the 1.368 billion

in US Dollars from account(s) where they could not be used to other accounts where they

were ostensibly clean; (iii) to create and use the contracts that were never to be honored

or performed as a means by which to engage in civil theft of 13.68 million in US Dollars

which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate

and convert monies that were entrusted pursuant to the "contracts"; (v) launder and

conceal the true origin of the original 1.368 billion in US Dollars that were to be used for

the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and

converted pursuant to those contracts  so that all traces of the true and beneficial owners

were erased and replaced with new / false owners; (vi) evade taxes as the monies were

electronically transferred from one bank to another; (vii) have conspired to prevent the

identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (viii) have conspired to prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

242. The criminal money laundering scheme and enterprise also included the destruction and concealment of evidence and witness tampering by interfering with investigations so as to frustrate Plaintiff's ability to (i) identify the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (ii) identify the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

243. The criminal money laundering scheme and enterprise included: (i) sending of letters and emails from Cyprus to Plaintiff in the United States; (ii) causing unlawful electronic monetary transfers of billions in US Dollars; and (iii) destruction and concealment of evidence

244. All of these acts were intended to further the criminal money laundering scheme and enterprise to interfere with the Plaintiff's contract and other rights.

245.    The criminal money laundering scheme and enterprise required and depended upon the exchange of email, faxes, telephone calls, and other electronic communications, as well as the use of mail.

246.    At all relevant times, each RICO Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

247.    As explained below the RICO Defendants violated 18 USC § 1962 (a) as a result of their receipt of *". . . income derived, directly or indirectly, from a pattern of racketeering activity . . . (and use or investment) directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect . . . foreign commerce . . .* involving the Plaintiffs' property rights in the United States through the (i) theft, misappropriation and conversion of monies of elderly Jews that were held in accounts that had been entrusted to the banks; (ii) laundering and concealment the true origin of the stolen, misappropriated and converted monies so that all traces of the true and beneficial owners was erased and replaced with new / false owners who were the banks' officers, directors and representatives; (iii) evasion of taxes as the monies were electronically transferred from one bank to another; and (iv) after some evidence of the banks wrongful acts were discovered, the banks embarked on a secondary aspect of the enterprise which was to conceal and deny their wrongdoings in the hopes that they would never be held to account for the theft, misappropriate and conversion of Jewish assets.

248.    As explained below the RICO Defendants violated 18 USC § 1962 (b) as a result of their acquiring and maintaining *"directly or indirectly, (an) interest in*

*(and) control of (an) enterprise which is engaged in, or the activities of which affect . . .*

*foreign commerce* . . . involving Plaintiffs' property rights in the United States.

249.    As explained below the RICO Defendants violated 18 USC § 1962 (c) as a result of their being *" . . . employed by (and) associated with any enterprise engaged in, or the activities of which affect . . . foreign commerce"* and conducted and participated *"directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."* all of which was designed to is to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (v) have conspired to prevent the (i) identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (ii) identification of the bank(s) into with the Advance Fees were being held so that Plaintiff

could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

250.    As explained below the RICO Defendants violated 18 USC § 1962 (d) as a result of their conspiring *"to violate . . . the provisions of (1962) subsection (a), (b), or (c)"*.

251.    As explained herein and below, the RICO Defendants violated 18 USC § 1341 because they *"devised . . . (a) scheme or artifice to defraud . . . (to obtain) money or property by means of false or fraudulent pretenses, representations, or promises . . ."* and used post offices and other authorized depositories for mail that was sent or delivered by government carriers between Cyprus and the Florida in furtherance of the criminal money laundering scheme and enterprise to  (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) conspire to prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be

paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (viii) conspire to prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

      252.    As explained herein and below, the RICO Defendants violated 18 USC § 1343 because their scheme and artifice to defraud . . . (and to obtain) money and property by means of false or fraudulent pretenses, representations, or promises" and did so by transmitting emails, faxes and other communications by wire and regarding interstate and foreign commerce in furtherance of the criminal money laundering scheme and enterprise to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) have conspired to prevent the identification of the persons / entities who were the owners / beneficial owners of the

1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (viii) have conspired to prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

253.    As explained herein and below, the RICO Defendants violated 18 USC § 1349 by conspiring with one another to further the criminal money laundering scheme and enterprise against commit the unlawful and illegal enterprise to interfere with Plaintiff's contract and other rights by (i) laundering of 1.368 billion in US Dollars and failing to use the monies for the "contracts" with Plaintiff; (ii) creating and using "contracts" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) creating and using contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (v) stealing, misappropriating and converting monies that were entrusted pursuant to the "contracts"; (v) laundering and concealing the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evading taxes as the monies were electronically transferred from one bank to another; (vii) conspiring to prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be

paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (viii) conspiring to prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

   **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

    a. Adjudging the RICO Defendants as having violated US RICO laws through the money laundering and advance fee contract scheme;

    b. Awarding Plaintiff Compensatory damages, including the 13.68 million in advance fees paid, interest, lost business and other related damages, in an amount to be determined by the trier of fact;

    c. Awarding Plaintiff Treble damages in an amount based on the compensatory damages as determined by the trier of fact;

    d. An award of fees and costs of Court in an amount determined by the trier of fact; and

    e. Any further relief this Court deems just and equitable.

## SECOND CAUSE OF ACTION
## <u>CONSPIRACY TO VIOLATE RICO – VIOLATION OF 18 U.S.C. § 1962 (c )</u>
## <u>and (d)</u>

  254. Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs1 to 27 and 81 to 232  of this Complaint as if set forth in full.

255.     The RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 USC § 1962(c) as described above, in violation of 18 USC § 1962(d).

256.     The RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct and the acts as described herein constitute a conspiracy to violate 18 USC § 1962(c), in violation of 18 U.S.C. § 1962(d).

257.     The RICO Defendants agreed to conduct or participate in, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 USC § 1962(c).

258.     Each RICO Defendant knew about and agreed to facilitate the Enterprise's criminal enterprise and scheme to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false

owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (viii) prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

259.    It was part of the conspiracy that the RICO Defendants and their coconspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth above in paragraphs 189 to 232, *supra.*

260.    As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 USC § 1962(d), Plaintiff has been damaged to the extent he (i) has been unable to enforce the contracts; (ii) has been unable to identity the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus ; (iii) has been unable to identify of the bank(s) into with the 13.68 million in US Dollars from the Advance Fees are being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts and (iv) has suffered significant

other damages in travel costs, investigative costs, professional fees and other monies paid to date.

261.    Pursuant to 18 USC § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

**WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

a.   Adjudging the RICO Defendants as having violated US RICO laws through the money laundering and advance fee contract scheme;

b.   Awarding Plaintiff Compensatory damages, including the 13.68 million in advance fees paid, interest, lost business and other related damages, in an amount to be determined by the trier of fact;

c.   Awarding Plaintiff Treble damages in an amount based on the compensatory damages as determined by the trier of fact;

d.   An award of fees and costs of Court in an amount determined by the trier of fact; and

e.   Any further relief this Court deems just and equitable.

### THIRD CAUSE OF ACTION - VIOLATION OF FLORIDA RICO FL. STAT. 895.01 et seq.

262.    Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

263.    The RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate Fl. Stat. 895.01 et seq. as described above.

264.    The RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct and the acts as described herein constitute a conspiracy to violate Fl. Stat. 895.01 et seq.

265.    The RICO Defendants agreed to conduct or participate in, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of violate Fl. Stat. 895.01 et seq.

266.    Each RICO Defendant knew about and agreed to facilitate the Enterprise's criminal enterprise and scheme to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) prevent the identification of the persons / entities who were the owners /

beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (viii) prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

267.    It was part of the conspiracy that the RICO Defendants and their coconspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth above in paragraphs 189 to 232, *supra.*

268.    As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of Fl. Stat. 895.01 et seq., Plaintiff has been damaged to the extent he (i) has been unable to enforce the contracts; (ii) has been unable to identity the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus ; (iii) has been unable to identify of the bank(s) into with the 13.68 million in US Dollars from the Advance Fees are being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts and (iv) has suffered significant other damages in travel costs, investigative costs, professional fees and other monies paid to date.

269.   Pursuant to Fl. Stat. 895.01 et seq., Plaintiff is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

WHEREFORE, Plaintiff hereby moves this Court for an Order including the following relief:

a.   Adjudging the RICO Defendants as having violated US RICO laws through the money laundering and advance fee contract scheme;

b.   Awarding Plaintiff Compensatory damages, including the 13.68 million in advance fees paid, interest, lost business and other related damages, in an amount to be determined by the trier of fact;

c.   Awarding Plaintiff Treble damages in an amount based on the compensatory damages as determined by the trier of fact;

d.   An award of fees and costs of Court in an amount determined by the trier of fact; and

e.   Any further relief this Court deems just and equitable.

## FOURTH CAUSE OF ACTION – AIDING AND ABETTING

270.   Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

271.   Each of the RICO Defendants aided and abetted / assisted with the Enterprise's criminal enterprise and scheme to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the

contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus and (viii) prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts.

272.    As a direct and proximate result of each RICO Defendant's aiding, abetting and assistance in the facilitation of the Enterprise's criminal enterprise and scheme to (i) launder 1.368 billion in US Dollars; (ii) create and use "contract" that were never to be honored or performed as the means by which to move the 1.368 billion in US Dollars from account(s) where they could not be used to other accounts where they were ostensibly clean; (iii) to create and use the contracts that were never to be honored or performed as a means by which to engage in civil theft of 13.68 million in US Dollars which were paid as "Advance Fees" pursuant to the "contracts"; (iv) steal, misappropriate and convert monies that were entrusted pursuant to the "contracts"; (v) launder and

conceal the true origin of the original 1.368 billion in US Dollars that were to be used for the "contracts" and the 13.68 million in US dollars that were stolen, misappropriated and converted pursuant to those contracts  so that all traces of the true and beneficial owners were erased and replaced with new / false owners; (vi) evade taxes as the monies were electronically transferred from one bank to another; (vii) prevent the identification of the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus  and (viii) prevent the identification of the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts, Plaintiff was unable to complete the contracts, was unable to compel performance of the contracts, was unable to identify the persons / entities who were the owners / beneficial owners of the 1.368 billion in US dollars that were supposed to be paid to Plaintiff pursuant to the contracts but which were actually being moved (laundered) through Defendant Cyprus Banks with no supervision or controls by Defendant Central Bank of Cyprus , was unable to identify the bank(s) into with the Advance Fees were being held so that Plaintiff could take action to recover the Advance Fee monies that were being wrongfully withheld in unknown accounts, and suffered other damages.

**WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

a.   Awarding Plaintiff Compensatory damages, including the 13.68 million in advance fees paid, interest, lost business and other related damages

in an amount to be determined by the trier of fact;

      b.  Awarding fees and costs of Court in an amount to be determined by the trier of fact;

      c.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier of fact; and

      d.  Any further relief this Court deems just and equitable.

## FIFTH CAUSE OF ACTION - BREACH OF CONTRACT

273.    Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

274.    Plaintiff complied with all terms of the contracts.

275.    Defendants Kallis, Rance and Their Companies, refused to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds.

276.    As a result of Defendants Kallis, Rance and Their Companies, refusal to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of

clean funds, Plaintiff's bank could not legally provide confirmation of a bank account into which monies of unknown ownership and lacking proof of origin of clean funds could be deposited and upon which Plaintiff's bank could issue the required bank guarantees for payment of fees, costs and repayment of the contract principal at the end of the contract terms.

277.    Defendants Kallis, Rance and Their Companies refusal to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds, was a breach of their obligations under the contract.

278.    As a direct and proximate result of Defendants Kallis, Rance and Their Companies refusal to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds, was a breach of their obligations under the contract, Plaintiff was unable to complete the contracts, was unable to enter into the infrastructure development projects and the trading programs.

279.    As a direct and proximate result of Defendants Kallis, Rance and Their Companies refusal to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-

principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your Client ("KYC") and proof of ownership and origin of clean funds, was a breach of their obligations under the contract, Plaintiff suffered damages and lost business opportunities.

WHEREFORE, Plaintiff hereby moves this Court for an Order including the following relief:

a.   Awarding Plaintiff Compensatory damages, including the 13.68 million in advance fees paid, interest, lost business and other related damages in an amount to be determined by the trier of fact;

b.   Awarding fees and costs of Court in an amount to be determined by the trier of fact;

c.   Awarding special, exemplary and punitive damages in an amount to be determined by the trier of fact; and

d.   Any further relief this Court deems just and equitable.

## SIXTH CAUSE OF ACTION - INTERFERENCE WITH CONTRACT

280.   Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

281.   Plaintiff complied with all terms of the contracts.

282.   Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, interfered with Plaintiff's contract rights by refusing to provide the customary and

required due diligence documentation according to the Wolfsberg Anti-Money

Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding

Anti-Money Laundering protocols for Banks, financial services companies, brokers and

agents, which documentation included the Defendants providing to Plaintiff's bank the

Know Your Client ("KYC") and proof of ownership and origin of clean funds.

283.    As a direct and proximate result of Defendants Kallis, Rance and Their

Companies and Their Companies, the Doe Defendants and the undisclosed / concealed

true owner or beneficial owner of the contract funds, interference with Plaintiff's contract

rights, Plaintiff was unable to complete the contracts, was unable to secure the contract

terms and monies for investments in infrastructure and development projects and trading

platforms.

284.    As a direct and proximate result of Defendants Kallis, Rance and Their

Companies and Their Companies, the Doe Defendants and the undisclosed / concealed

true owner or beneficial owner of the contract funds, interference with Plaintiff's contract

rights, Plaintiff suffered damages and lost business opportunities.

WHEREFORE, Plaintiff hereby moves this Court for an Order including

the following relief:

a.    Awarding Plaintiff Compensatory damages, including the 13.68

million in advance fees paid, interest, lost business and other related damages

in an amount to be determined by the trier of fact;

b.    Awarding fees and costs of Court in an amount to be determined by

the trier of fact;

c.    Awarding special, exemplary and punitive damages in an amount to be

determined by the trier of fact; and

d.  Any further relief this Court deems just and equitable.

## SEVENTH CAUSE OF ACTION - CIVIL THEFT

285.    Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

286.    Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, acceptance of the 13.68 million US DOLLARS in Advance Fees obligated them to comply with the terms of, and not interfere with Plaintiff's contract rights.

287.    As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, used the contracts to get 13.68 million US DOLLARS in Advance Fees.

288.    As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, never intended and/or refused to comply with the terms of, and not interfere with Plaintiff's contract rights.

289.    As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, refusal to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your

Client ("KYC") and proof of ownership and origin of clean funds, was a breach of the contract.

290.    As a direct and proximate result of Defendants Kallis, Rance and Their Companies and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, breach and interference with Plaintiff's contract rights,  Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, were not entitled to keep the 13.68 million US DOLLARS in Advance Fees.

291.    Defendants Kallis, Rance and Their Companies and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, failure and refusal to return the 13.68 million US DOLLARS in Advance Fees constituted civil theft under Florida law.

292.    As a direct and proximate result of Defendants Kallis, Rance and Their Companies and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, civil theft of Plaintiff's 13.68 million US DOLLARS in Advance Fees, Plaintiff suffered damages and lost business opportunities.

**WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

a.    Awarding Plaintiff Compensatory damages, including the 13.68 million in advance fees paid, interest, lost business and other related damages in an amount to be determined by the trier of fact;

b.    Awarding fees and costs of Court in an amount to be determined by

the trier of fact;

    c.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier of fact; and

    d.  Any further relief this Court deems just and equitable.

## EIGHTH CAUSE OF ACTION - UNJUST ENRICHMENT

293.    Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

294.    The use of the Plaintiff's contracts (i) allowed the laundering of the 1.368 billion US Dollars that were set aside for the contracts and (ii) compelled the payment of the 13.68 million US DOLLARS in Advance Fees.

295.    Defendants Kallis, Rance and Their Companies, the Doe Defendants, the undisclosed / concealed true owner or beneficial owner of the contract funds, Defendant Cyprus Banks, and Defendants Law Office and its representatives benefited from (i) the 1.368 billion US Dollars that were set aside for the contracts and which were actually laundered and (ii) the 13.68 million US DOLLARS in Advance Fees that were paid pursuant to the contracts.

296.    Defendants Kallis, Rance and Their Companies, the Doe Defendants, the undisclosed / concealed true owner or beneficial owner of the contract funds, Defendant Cyprus Banks, and Defendants Law Office and its representatives benefited from (i) the 1.368 billion US Dollars that were set aside for the contracts and which were actually laundered and (ii) the 13.68 million US DOLLARS in Advance Fees that were paid

pursuant to the contracts, were unjust in light of the refusal to honor the contracts and the ongoing concealment and interference with Plaintiff's contract rights.

297.   The above described benefits that Defendants Kallis, Rance and Their Companies, the Doe Defendants, the undisclosed / concealed true owner or beneficial owner of the contract funds, Defendant Cyprus Banks, and Defendants Law Office and its representatives received was unjust.

298.   As a direct and proximate result of Defendants Kallis, Rance and Their Companies, the Doe Defendants, the undisclosed / concealed true owner or beneficial owner of the contract funds, Defendant Cyprus Banks, and Defendants Law Office and its representatives' unjust benefits, Plaintiff suffered damages and lost business opportunities.

WHEREFORE, Plaintiff hereby moves this Court for an Order including the following relief:

a.   Directing that Defendants disgorge all monies they made through laundering the 1.368 billion in US Dollars that were to be available for the contracts;

b.   Directing that Defendants disgorge all monies they made by withholding the 13.68 million in advance fees;

c.   Awarding compensatory damages, interest, lost business and other related damages in an amount to be determined by the trier of fact;

d.   Awarding fees and costs of Court in an amount to be determined by the trier of fact;

e.   Awarding special, exemplary and punitive damages in an amount to be determined by the trier of fact; and

f.  Any further relief this Court deems just and equitable.

## NINETH CAUSE OF ACTION - CONVERSION

299.    Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

300.    Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, acceptance of the 13.68 million US DOLLARS in Advance Fees obligated them to comply with the terms of, and not interfere with Plaintiff's contract rights.

301.    As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, used the contracts to get 13.68 million US DOLLARS in Advance Fees.

302.    As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, never intended and/or refused to comply with the terms of, and not interfere with Plaintiff's contract rights.

303.    As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, refusal to provide the customary and required due diligence documentation according to the Wolfsberg Anti-Money Laundering Principles (https://www.wolfsberg-principles.com/) and all laws regarding Anti-Money Laundering protocols for Banks, financial services companies, brokers and agents, which documentation included the Defendants providing to Plaintiff's bank the Know Your

Client ("KYC") and proof of ownership and origin of clean funds, was a breach of the contract.

304.    As explained above, when Defendants Kallis, Rance and Their Companies and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, breach and interference with Plaintiff's contract rights,  Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, refused to comply with and honor the contracts they were not entitled to keep the 13.68 million US DOLLARS in Advance Fees.

305.    Instead of returning the 13.68 million US DOLLARS in Advance Fees paid for contracts that were not fulfilled by Defendants Kallis, Rance and Their Companies and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, Plaintiff's 13.68 million US DOLLARS in Advance Fees were converted for Defendants use and benefits.

306.    As a direct and proximate result of Defendants Kallis, Rance and Their Companies and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds conversion of Plaintiff's 13.68 million US DOLLARS in Advance Fees, Plaintiff suffered damages and lost business opportunities.

**WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

a.   Awarding compensatory damages for the 13.68 million in advance fees that were taken / converted by Defendants, plus interest, lost business and other related damages in an amount to be determined by the trier of fact;

b.   Awarding fees and costs of Court in an amount to be determined by the trier of fact;

c.   Awarding special, exemplary and punitive damages in an amount to be determined by the trier of fact; and

d.   Any further relief this Court deems just and equitable.

## TENTH CAUSE OF ACTION – BAILMENT

307.   Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

308.   Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, acceptance of the 13.68 million US DOLLARS in Advance Fees obligated them to comply with the terms of, and not interfere with Plaintiff's contract rights.

309.   As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, used the contracts to get 13.68 million US DOLLARS in Advance Fees.

310.   As explained above, Defendants Kallis, Rance and Their Companies, the Doe Defendants and the undisclosed / concealed true owner or beneficial owner of the contract funds, refusal to comply with the terms of, and interference with, Plaintiff's contract rights, the 13.68 million in US Dollars paid as Advance Fee were owed to Plaintiff.

311.   The 13.68 million in US Dollars that were owed to and/or due to be repaid to Plaintiff.

312.    Defendants Kallis, Rance and Their Companies, the Doe Defendants, the undisclosed / concealed true owner or beneficial owner of the contract funds and Defendant Cyprus Banks, holding of the 13.68 million in US Dollars that were owed to and/or due to be repaid to Plaintiff is held in trust for and/or as an "unintended bailment" as to which Plaintiff is entitled to the return / repayment of the 13.68 million in US Dollars plus interest.

313.    Plaintiff demanded the return of the 13.68 million in US Dollars that were owed to and/or due to be repaid to Plaintiff for the contracts that were never performed.

314.    Defendants Kallis, Rance and Their Companies, the Doe Defendants, the undisclosed / concealed true owner or beneficial owner of the contract funds and Defendant Cyprus Banks, holding of and refusal to return / repay the 13.68 million in US Dollars that were owed to and/or due to be repaid to Plaintiff is unlawful.

315.    As a direct and proximate result of Defendants Kallis, Rance and Their Companies and Their Companies, the Doe Defendants, the undisclosed / concealed true owner or beneficial owner of the contract funds and Defendant Banks holding / withholding of the above 13.68 million US DOLLARS in Advance Fees, Plaintiff suffered damages and lost business opportunities.

**WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

a.    Directing that Defendants return 13.68 million in advance fees that were taken / converted and are being held as a "bailment" by Defendants, plus interest, lost business and other related damages in an amount to be determined by the trier of fact;

b.    Awarding fees and costs of Court in an amount to be determined by

the trier of fact;

    c.  Awarding special, exemplary and punitive damages in an amount to be determined by the trier of fact; and

    d.  Any further relief this Court deems just and equitable.

## ELEVENTH CAUSE OF ACTION - ACCOUNTING

316.    Plaintiff realleges and incorporates by specific reference the allegations and facts as set forth in paragraphs 1 to 27 and 81 to 232 of this Complaint as if set forth in full.

317.    Plaintiff's claims for equitable accounting are based on the fiduciary relationship that was created by the contracts pursuant to which 13.68 million US Dollars was transferred to Defendants Kallis, Rance and their Companies and entrusted to one of Defendant Cyprus Banks.

318.    Defendants Kallis, Rance and their Companies and Defendant Cyprus Banks have an obligation to Plaintiff to provide an accounting for and return the 13.68 million US Dollars that were paid for contracts that were never honored.

319.    Plaintiff made a demand that Defendants Kallis, Rance and their Companies and Defendant Cyprus Banks provide an accounting for and return the 13.68 million US Dollars that were paid for contracts that were never honored.

320.    Defendants Kallis, Rance and their Companies and Defendant Cyprus Banks have refused and in fact ignored Plaintiff's request for an accounting and return of the 13.68 million US Dollars that were paid for contracts that were never honored.

321.    As a direct and proximate result Defendants Kallis, Rance and their Companies and Defendant Cyprus Banks refusal to provide an accounting and return of

the 13.68 million US Dollars that were paid for contracts that were never honored, Plaintiff has been damaged in an amount, in excess of the 13.68 million in US Dollars plus interest and other damages, which amount should be determined by the trier of fact.

        **WHEREFORE**, Plaintiff hereby moves this Court for an Order including the following relief:

      a. Directing Defendants Kallis, Rance and Their Companies and Defendant Cyprus Banks to provide an Accounting of the 13.68 million in Advance fees;

      b. Compensatory damages;

      c. An award of fees and costs of Court; and

      d. Any further relief this Court deems just and equitable.

Dated: February 19, 2019

/s/ Edward D. Fagan
Edward D. Fagan
590 NE Wavecrest Way
Boca Raton, FL. 33432
Tel. (561) 757-5432
Email:
faganinternational@gmail.com
Plaintiff Pro Se

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable and only as to those issues involving the non-sovereign Defendants.

Dated: February 19, 2019

/s/ Edward D. Fagan
Edward D. Fagan
590 NE Wavecrest Way
Boca Raton, FL. 33432
Tel. (561) 757-5432
Email:
faganinternational@gmail.com
Plaintiff Pro Se